521 F.2d 360
 32 A.L.R.Fed. 751
 ALLIS-CHALMERS CORPORATION, Appellee,
v.
PHILADELPHIA ELECTRIC COMPANY, Appellant,
v.
ALLIS-CHALMERS CORPORATION, Defendant on Counterclaim,
v.
WESTINGHOUSE ELECTRIC CORPORATION, Third-Party Defendant.
 No. 74-1936.
 United States Court of Appeals,
Third Circuit.
 Argued March 18, 1975.
Decided July 10, 1975.
 
 William T. Coleman, Jr., Richard L. Bazelon, Gary R. Leadbetter, Philadelphia, Pa., Dilworth, Paxson, Kalish, Levy & Coleman, Philadelphia, Pa., for appellant.
 Philip M. Hammett, James D. Crawford, Ralph G. Wellington, Philadelphia, Pa., Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellee.
 Before ALDISERT, GIBBONS and GARTH, Circuit Judges.
 OPINION OF THE COURT
 GARTH, Circuit Judge.
 
 
 1
 In this diversity case the district court: (1) granted summary judgment on the plaintiff's complaint before adjudicating the defendant's pending counterclaim; and (2) certified that judgment as final under Fed.R.Civ.P. 54(b). This appeal challenges the district court's grant of summary judgment, its 54(b) certification, and its refusal to stay enforcement of the judgment. We dismiss the appeal and hold that the certification of the district court's grant of summary judgment as final under Rule 54(b) of the Federal Rules of Civil Procedure must be vacated because of the failure of the court to articulate reasons for the certification.[1]I.
 
 
 2
 The plaintiff, Allis-Chalmers Corporation (hereinafter "AC"), having sold eight transformers to the defendant, Philadelphia Electric Corporation (hereinafter "PECO"), and having received payment for only five, commenced this action to compel payment for the remaining three transformers and for the cost of certain repairs made by AC to PECO's equipment. PECO's answer admitted the amounts claimed by AC[2] but asserted as a set-off and counterclaim unrelated claims which, if established, would exceed in amount the sums claimed by AC.[3]
 
 
 3
 After issue had thus been joined, the plaintiff moved ". . . pursuant to Rule 56 and 54(b) of the Federal Rules of Civil Procedure, for summary judgment against defendant. . . ." AC accompanied its motion with affidavits establishing that it was due $497,742.70. As indicated Supra note 2, PECO filed no affidavit disputing this claim but rather argued that its set-off and counterclaim barred the entry of summary judgment in favor of AC. The district court held that, since PECO's counterclaim was factually unrelated to the plaintiff's cause of action and since there were no genuinely disputed issues of material fact concerning plaintiff's claim, ". . . the entry of summary judgment on plaintiff's claim is not only proper but is required under Federal Rule 56. . . ." Therefore, on July 19, 1974, the district court entered an order granting summary judgment for plaintiff. The order recites in relevant part:
 
 
 4
 ". . . The Court, finding that no just cause exists for delaying the entry of this judgment, hereby directs that such judgment be entered pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, in the amount of four hundred ninety seven thousand seven hundred forty-two dollars and seventy cents ($497,742.70) plus interest and costs."
 
 
 5
 This appeal requires us in the first instance to consider the propriety of the district court's 54(b) certification. Although both AC and PECO have focused on the summary judgment disposition as the central issue on this appeal, we cannot reach that issue unless our jurisdiction has been properly invoked by an appealable order. This Court obtains jurisdiction only when an appeal is taken from a final order (28 U.S.C. § 1291) or from an appealable interlocutory order (28 U.S.C. § 1292). As the Supreme Court stated in Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 437-38, 76 S.Ct. 895, 900-01, 100 L.Ed. 1297 (1956):
 
 
 6
 ". . . The District Court Cannot, in the exercise of its discretion, treat as 'final' that which is not 'final' within the meaning of § 1291. But the District Court May, by the exercise of its discretion in the interest of sound judicial administration, release for appeal final decisions upon one or more, but less than all, claims in multiple claims actions. . . .
 
 
 7
 Rule 54(b) . . . scrupulously recognizes the statutory requirement of a 'final decision' under § 1291 as a basic requirement for an appeal to the Court of Appeals. . . ."
 
 
 8
 Hence, our jurisdiction depends upon whether the district court properly granted 54(b) certification. If that court abused its discretion in certifying the summary judgment as final, we are without jurisdiction to entertain this appeal. See B. B. Adams General Contractors, Inc. v. Department of Housing and Urban Development, 501 F.2d 176 (5th Cir. 1974). Since we cannot consider the merits of a non-final order, we turn first to the threshold question of the propriety of the 54(b) certification.
 
 II.
 
 9
 Fed.R.Civ.P. 54(b)[4] is designed to facilitate the entry of judgment on one or more claims, or as to one or more parties, in a multi-claim/multi-party action. The rationale for its adoption was stated by the Supreme Court in Sears, Roebuck & Co. v. Mackey, supra 351 U.S. at 432, 76 S.Ct. at 898, as follows:
 
 
 10
 "With the Federal Rules of Civil Procedure, there came an increased opportunity for the liberal joinder of claims in multiple claims actions. This, in turn, demonstrated a need for relaxing the restrictions upon what should be treated as a judicial unit for purposes of appellate jurisdiction. Sound judicial administration did not require relaxation of the standard of finality in the disposition of the individual adjudicated claims for the purpose of their appealability. It did, however, demonstrate that, at least in multiple claims actions, some final decisions, on less than all of the claims, should be appealable without waiting for a final decision on All of the claims . . .."
 
 
 11
 The rule attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties. Aetna Insurance Co. v. Newton, 398 F.2d 729, 734 (3d Cir. 1968); RePass v. Vreeland, 357 F.2d 801, 804 (3d Cir. 1966); Panichella v. Pennsylvania Railroad Co., 252 F.2d 452, 454 (3d Cir. 1958); See Wright & Miller, Federal Practice and Procedure: Civil § 2654 (1973). ". . . (T)he District Court is used as a 'dispatcher.' It is permitted to determine, in the first instance, the appropriate Time when each 'final decision' upon 'one or more but less than all' of the claims in a multiple claims action is ready for appeal. . . ." Mackey, supra 351 U.S. at 435, 76 S.Ct. at 899. In Panichella, supra at 455, we previously addressed the proper exercise of the district court's discretion with respect to 54(b) certification. We said:
 
 
 12
 ". . . ordinarily an application for a 54(b) order requires the trial judge to exercise considered discretion, weighing the overall policy against piecemeal appeals against whatever exigencies the case at hand may present. Indeed, the draftsmen of this Rule have made explicit their thought that it would serve only to authorize 'the exercise of a discretionary power to afford a remedy in the infrequent harsh case * * *.' 28 U.S.C.A., Federal Rules of Civil Procedure, 118-119 note. It follows that 54(b) orders should not be entered routinely or as a courtesy or accommodation to counsel. The power which this Rule confers upon the trial judge should be used only 'in the infrequent harsh case' as an instrument for the improved administration of justice and the more satisfactory disposition of litigation in the light of the public policy indicated by statute and rule. See 6 Moore, Federal Practice, 1953, 264-65."A proper exercise of discretion under Rule 54(b) requires the district court to do more than just recite the 54(b) formula of "no just reason for delay." The court should clearly articulate the reasons and factors underlying its decision to grant 54(b) certification.[5] ". . . It is essential . . . that a reviewing court have some basis for distinguishing between well-reasoned conclusions arrived at after a comprehensive consideration of all relevant factors, and mere boiler-plate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law. . . ." Protective Committee v. Anderson, 390 U.S. 414, 434, 88 S.Ct. 1157, 1168, 20 L.Ed.2d 1 (1968) (compromise of claims in bankruptcy). In the same vein, the Second Circuit in Gumer v. Shearson, Hammill & Co., Inc.,516 F.2d 283 (2d Cir. 1974) said:
 
 
 13
 "We suggest to the district courts that in the future it would be helpful to us in reviewing the exercise of discretion in granting a Rule 54(b) certificate if the court, rather than incorporating in the certificate (footnote omitted) the conclusory language of Rule 54(b), would make a brief reasoned statement in support of its determination that, 'there is no just reason for delay' and its express direction for 'the entry of a final judgment as to one or more but fewer than all of the claims or parties' where the justification for the certificate is not apparent. . . ."
 
 
 14
 Accord, Schwartz v. Compagnie General Transatlantique, 405 F.2d 270, 275 (2d Cir. 1968) (". . . the trial court (should) marshall the competing considerations and state the ones considered to be most important."). See Wright & Miller, Federal Practice and Procedure: Civil § 2659 (1973).
 
 
 15
 We endorse the suggestion contained in Gumer as a most desirable practice. Because it will convey to litigants the reasons for the court's decision and will afford the appellate court a meaningful basis for review, we incorporate that practice as a requirement for all Rule 54(b) certifications.
 
 
 16
 In reviewing 54(b) certifications, other courts have considered the following factors,[6] Inter alia : (1) the relationship between the adjudicated and unadjudicated claims;[7] (2) the possibility that the need for review might or might not be mooted by future developments in the district court;[8] (3) the possibility that the reviewing court might be obliged to consider the same issue a second time;[9] (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final;[10] (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.[11] Depending upon the facts of the particular case, all or some of the above factors may bear upon the propriety of the trial court's discretion in certifying a judgment as final under Rule 54(b).
 
 
 17
 The variety and number of factors which may be present in any one case highlights the importance of the district court's evaluation and articulation of those factors leading to its grant of 54(b) certification. Since final certification of an interlocutory order should occur only "in the infrequent harsh case," Panichella, supra, it is vital that the reviewing court be completely apprised of the reasons supporting the district court's exercise of discretion and of those factors which have weighed the scales most heavily in favor of certification.
 
 
 18
 The guiding principles established by Panichella, supra, And succeeding cases, may therefore be summarized: (1) the burden is on the party seeking final certification to convince the district court that the case is the "infrequent harsh case" meriting a favorable exercise of discretion;[12] (2) the district court must balance the competing factors present in the case to determine if it is in the interest of sound judicial administration and public policy to certify the judgment as final; (3) the district court must marshall and articulate the factors upon which it relied in granting certification so that prompt and effective review can be facilitated.
 
 III.
 
 19
 Because of the absence of a reasoned explanation for the court's action, demonstrating that the foregoing guidelines were considered, we are unable to conclude that the granting of the Rule 54(b) certification was proper in this case.
 
 
 20
 The absence of a genuine dispute as to any material fact regarding AC's claim may have made it appropriate for the district court to grant summary judgment on that claim. However, the considerations which resulted in a grant of summary judgment are not the same considerations relevant to an order of final certification under Rule 54(b). Under summary judgment procedure, the essential inquiry is whether material facts are disputed. Under 54(b) procedure, the essential inquiry is whether, after balancing the competing factors, finality of judgment should be ordered to advance the interests of sound judicial administration and public policy.
 
 
 21
 Here, the district court made no independent analysis of the factors which led it to certify its summary judgment order as final. The only reference in the district court opinion to factors relevant to the 54(b) certification appears in a summary judgment context. The district court was apparently of the view that a counterclaim, factually unrelated to the subject matter of the main claim, should neither bar summary judgment nor should it bar 54(b) certification. While the factual relationship between the claims is one factor to be considered in granting 54(b) certification, See Cold Metal Process Co., supra N. 7, it is not in itself determinative of the 54(b) issue. The failure of the district court to refer to any supporting or countervailing factors leaves us without assurance that this is indeed "the infrequent harsh case" in which final certification should be granted.
 
 
 22
 The district court's Memorandum and Order leaves us, at the least, with the following unanswered questions: Is PECO's financial condition such that AC might in any way be prejudiced by postponing execution on its judgment until PECO's counterclaim was fully adjudicated? Conversely, is AC's financial condition such that PECO might be prejudiced if AC was allowed immediate execution on its judgment before adjudication of PECO's counterclaim? Is PECO's counterclaim frivolous, facially defective or otherwise legally insufficient? What would be the effect of, and the necessity for, immediate execution prior to the complete adjudication of all claims? Is there any reason why the PECO claim should not be fully adjudicated, and to the extent of any recovery, be set off against the judgment in favor of AC?[13] Do these considerations of solvency, equity (regarding potential priorities in judgment), or other economic factors (including possible duress) weigh for or against final certification of the AC judgment? The absence of any discussion of these considerations, among others, in the district court's opinion demonstrates to us that the district court did not undertake the "factor-balancing-analysis" required by Rule 54(b); or, if it did perform such an analysis, it failed to articulate the factors it relied upon in reaching the decision to grant certification.
 
 
 23
 In the absence of unusual or harsh circumstances,[14] we believe that the presence of a counterclaim, which could result in a set-off against any amounts due and owing to the plaintiff, weighs heavily against the grant of 54(b) certification. In TPO Incorporated, supra, We stated:
 
 
 24
 ". . . In our view the counterclaim is compulsory, and its presence weighs the scales against the grant of summary judgment."
 
 
 25
 487 F.2d at 134. We recognize that TPO Incorporated is distinguishable from this case in that the TPO Counterclaim was compulsory within the meaning of Fed.R.Civ.P. 13(a) while here PECO's counterclaim is clearly permissive under Fed.R.Civ.P. 13(b).[15] Nevertheless, we are concerned here, as we were in TPO Incorporated, with the possibility that a defendant will have to pay over monies to a plaintiff only to be reimbursed if defendant prevails on its as yet unadjudicated counterclaim. As stated in Wright & Miller, Federal Practice and Procedure: Civil § 2659 (1973):
 
 
 26
 ". . . (T)he possibility of a set-off if defendant recovers on a counterclaim may indicate that an immediate appeal should not be allowed, (footnote omitted) presumably because of the undesirability of awarding an amount that may be reduced by a subsequent judgment on defendant's counterclaim. . . ."
 
 
 27
 Thus, as we stated previously, we view the presence of a counterclaim seeking a set-off as one factor weighing against the grant of 54(b) certification in a case such as this one. See Schroeter v. Ralph Wilson Plastics, Inc., 49 F.R.D. 323 (S.D.N.Y.1969).
 
 
 28
 In addition to the failure of the district court to specify those factors upon which it relied in granting certification and, thereby, to furnish us with the benefit of its analysis in marshalling the relevant factors, we also note the complete absence of any affirmative demonstration by the plaintiff as to why there was "no just reason for delay." In its "Memorandum . . . in Support of its Motion for Summary Judgment" AC argued that from the pleadings and affidavits summary judgment should be granted. However, AC never presented any facts or demonstrated any reasons why, if summary judgment was granted, it should be made final under Rule 54(b). In our discussion of Panichella, supra, we emphasized that AC had the burden of showing some danger of hardship or injustice through delay which would be alleviated by immediate 54(b) certification. AC's failure to satisfy its burden of demonstrating why final certification should be granted, coupled with the failure of the district court to analyze the relevant factors and to set forth its reasons for granting AC's motion, compel the conclusion that it was an abuse of discretion, under the facts of this case, to certify the summary judgment in favor of Allis-Chalmers as final under Rule 54(b).[16]
 
 
 29
 For lack of a competent Rule 54(b) certification, and therefore, for lack of finality, the appeal will be dismissed with a direction to the district court that it vacate so much of its July 19, 1974, order as entered judgment pursuant to Rule 54(b). The case will be remanded to the district court for further proceedings consistent with this opinion. Each party to bear its own costs.
 
 
 30
 GIBBONS, Circuit Judge (dissenting).
 
 
 31
 In times of tight money and high interest rates the ingenuity of debtors in devising reasons for not paying liquidated indebtedness is limited only by the willingness of courts to countenance delaying tactics. Usually in such disputes the fundamental issue is which party will be required to bear the cost of financing the indebtedness during the delay. The majority, by an unprecedented and unwarranted interpretation of Rule 54(b), Fed.R.Civ.P., has tilted the judicial process in favor of debtors. In this case the debtor is a large electric utility and the creditor is a large equipment manufacturer. But the sweeping pronouncements of the majority opinion, which have the effect of requiring a written opinion for every Rule 54(b) certification, will have the practical consequence of destroying the utility of that rule. The draftsmen of Rule 54(b) never intended such a result, and the authorities relied upon do not justify it. Moreover, the majority, by imposing upon the district court the obligation to make specific findings upon its laundry list of requirements for the exercise of discretion, and suggesting that we will then review the exercise of discretion, has blurred the distinction between appeals from final decisions disposing of separate claims and those from interlocutory appeals of nonfinal orders. Rule 54(b) does not give this court authority to decline to hear an appeal from a final decision on a separate claim as to which the district court has directed the entry of judgment. Under 28 U.S.C. § 1292(b) we may decline to hear an interlocutory appeal. The majority would prefer that we have the same power under Rule 54(b) and has devised an improper construction of the rule to achieve that result. It has done so, moreover, in a case in which neither party urged the ground on which dismissal of the appeal has been made to turn, and in which the grounds for appeal actually tendered have been ignored.I. ALLIS-CHALMERS' CLAIM HAS BEEN FINALLY DETERMINED
 
 
 32
 Allis-Chalmers seeks $497,742.70 for goods sold and delivered and for services rendered. Philadelphia Electric Company admits it received the goods, that the services were rendered, and that it must in some form at some time pay $497,742.70. It asserts an entirely unrelated, unliquidated, and disputed counterclaim growing out of a fire loss. The fire took place in January 1972 before the delivery of the goods electric transformers and before the rendition of the services. Thus what we are dealing with is an undisputed claim for $497,742.70 which can in no way be reduced or changed by any subsequent event in the district court, and which, when it comes before us years from now in an appeal following the litigation over the fire loss, will be before us In exactly the same posture of total finality as at present. But the majority holds that before the district court may direct the entry of a final judgment for the undisputed $497,742.70, which can never come before us other than undisputed, and which by any test imaginable is separable from and independent of the fire loss claim, it must write an opinion. The practical effect of the decision is to put in the hands of Philadelphia Electric Company the power of self-help in financing repair of the fire damage to its electric generating plant by purchasing goods and services, declining payment and when sued, asserting a permissive counterclaim growing out of events which antedated the purchases. If this is not the case for which Rule 54(b) was intended then none is.
 
 II. THE HISTORY AND STRUCTURE OF RULE 54(b)
 
 33
 Prior to the adoption of the Federal Rules the federal courts followed the rule of Metcalfe's Case[1] that a writ of error would not lie to bring up a judgment that did not completely dispose of the action.[2] As multi-party litigation became more complex the Metcalfe rule evolved into the single judicial unit rule of finality. A judgment was not final that disposed of less than all claims of one plaintiff against one defendant.[3] Where the defendant interposed a claim over against the plaintiff both claim and counterclaim had to be resolved for finality.[4] If an order terminated the action against one defendant alleged to be jointly or secondarily liable with others, but not as to all, it was not final.[5] And where liability in multi-party cases arose out of the same set of facts the entire case was treated as a judicial unit.[6] But in multi-party cases an order adjudicating a separate and distinct claim or terminating the action as to a separate and distinct claim was deemed to be final.[7]
 
 
 34
 As originally adopted the first two sentences of Rule 54(b) provided:
 
 
 35
 "When more than one claim for relief is presented in an action, the court at any stage, upon a determination of the issues material to a particular claim and all counterclaims arising out of the transaction or occurrence which is the subject matter of the claim, may enter a judgment disposing of such claim. The judgment shall terminate the action with respect to the claim so disposed of and the action shall proceed as to the remaining claims. . . ." 6 J. Moore, Federal Practice P 54.01(5)(3), at 51 (2d ed. 1974).
 
 
 36
 The judicial unit defined by this language was delimited by a transaction or occurrence and all counterclaims arising out of that transaction or occurrence.[8] In contrast to the common law, Rule 54(b) recognized that a claim to which a Permissive counterclaim was asserted could be separately and finally adjudicated.[9] This modification of the rule of Metcalfe's Case was an obviously necessary accommodation to the wide open joinder rules of the Federal Rules of Civil Procedure. But while it was clear enough that a noncompulsory counterclaim (as in the instant case) was from a separate judicial unit,[10] it was not so clear in other situations what orders were final judgments or what judgments covered separate judicial units. A party might neglect taking an appeal from an order disposing of part of the case only to find that when he took an appeal at the end of the entire case it was untimely. See Dickinson v. Petroleum Conversion Corp., 338 U.S. 507, 70 S.Ct. 322, 94 L.Ed. 299 (1950). Since a losing party had to determine finality at the peril of losing an opportunity to appeal, the rule as originally drafted encouraged cautious litigators to err in favor of seeking interlocutory appellate review. These and other difficulties led the Advisory Committee on the Federal Rules of Civil Procedure to propose amendments to Rule 54(b) in 1946 and again in 1961.[11] The 1946 amendment redefined the treatment of multiple Claims, and the 1961 amendment redefined the treatment of multiple Parties. The text of the first two sentences of the 1946 revision with the 1961 additions in italics and the 1961 deletions in brackets, reads:
 
 
 37
 "When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim or third-party claim, Or when multiple parties are involved, the court may direct the entry of a final judgment (upon) As to one or more but (less) Fewer than all of the claims Or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates (less) Fewer than all the claims Or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims Or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims And the rights and liabilities of all the parties. . . ." 6 J. Moore, Federal Practice P 54.01(6.-4) (2d ed. 1974).
 
 
 38
 This is Rule 54(b) today. The principal change which the 1946 amendment wrought in the rule was to place in the district court, rather than in the appellate courts, the determination of finality, and thus of appealability. This eliminated the potential trap of the holding in Dickinson v. Petroleum Conversion Corp., supra. Another change, however, was the redefinition of judicial unit from "claim for relief" and "counterclaims arising out of the transaction or occurrence" to "one or more but fewer than all of the claims." Neither the original nor the amended rule attempts to make final a partial[12] or tentative adjudication of a single claim for relief. But clearly, the amended language now permits the district court to treat as final an adjudication of a claim to which even a compulsory counterclaim has been filed.[13] Since the definition of judicial unit was thus broadened in 1946 the rule can hardly be construed to exclude finality from the decision of a separate claim as to which a merely permissive counterclaim has been filed. The adjudication of the Allis-Chalmers claim to which a permissive counterclaim has been filed is the type of adjudication which at all times since 1938 had been afforded Rule 54(b) finality.
 
 
 39
 III. RULE 54(b) AND THE POLICIES FAVORING THE FINAL JUDGMENT RULE
 
 
 40
 Obviously in some instances the broad definition of judicial unit embodied in the 1946 amendment can lead to a possible conflict with the policies which favor appealability of final judgments only. Those policies I perceive to be (1) the avoidance of appellate adjudications which by virtue of the disposition of other parts of the case may become unnecessary, and (2) the avoidance of fragmentation in the adjudication of related legal or factual issues.
 
 
 41
 A paradigm of the first policy is Panichella v. Pennsylvania Railroad Co., 252 F.2d 452 (3d Cir. 1958). In that case a district court entered an order making the disposition of a third-party claim in favor of the third-party defendant immediately appealable. In Panichella the court was dealing with a case which before 1938 would not have been appealable, and which between 1938 and 1946 probably would not have fallen within the Rule 54(b) definition of judicial unit. The liability of the third-party defendant, an alleged joint tortfeasor, grew out of the very transaction or occurrence which gave rise to the plaintiff's claim. If the third-party defense of a release were to be rejected on appeal the third-party liability could not, in the absence of a factual record on the underlying claim, be adjudicated. If, on the other hand, the jury should find the facts favorably to the initial defendant or the third-party defendant, the release issue would never come before the appellate court. The effect of the district court's decision was to force the court of appeals to adjudicate the effect of a release, which adjudication might be mooted by the subsequent disposition on the main claim, in a context in which the appellate decision on the issue might not terminate the case even as to the party advancing it. This court held that the entry of a Rule 54(b) order in such circumstances was an abuse of discretion. It remanded with a direction to vacate the order appealed from. Contrast the instant case in which the debt to Allis-Chalmers from Philadelphia Electric Company is in no way dependent upon or related to the counterclaim, and in which because of the admission of liability the Only record which could ever be presented to an appellate court has been fully developed. In the permissive counterclaim situation the first policy favoring the final judgment rule is not implicated.
 
 
 42
 A model of the second policy avoiding fragmentation in adjudication of related legal or factual issues is presented by TPO Inc. v. FDIC, 487 F.2d 131 (3d Cir. 1973), although that case actually turned on Rule 56 rather than on Rule 54(b). To a suit to recover on a cashier's check the defendant receiver for an insolvent bank filed an affirmative defense and a compulsory counterclaim for fraud on the part of the payee holder. We held that the liability of the drawee bank should not be finally determined until the affirmative defense and compulsory counterclaim growing out of the same transaction were adjudicated. Obviously in such a case it would make no sense to fragment the litigation over a single completely interrelated transaction. Associated Hardware Supply Co. v. Big Wheel Distributing Co., 355 F.2d 114 (3d Cir. 1966) involved a similar attempt to fragment litigation over a single transaction. Contrast this case, however, where the plaintiff's claim is entirely unrelated to the counterclaim, where liability for the $497,742.70 has been conceded, and where the only real effect of the remand is to delay execution on that admitted liability.
 
 
 43
 The policies favoring the final judgment rule are simply inapplicable to this case. The Allis-Chalmers' claim is as separate as it could possibly be and as finally determined as it ever can be.
 
 IV. THE MAJORITY STANDARDS
 
 44
 The majority lists five factors which it says courts have considered in reviewing Rule 54(b) certifications.[14] It then lists several questions which it says the district court left unanswered. We consider first the five factors:
 
 
 45
 (1) "The relationship between the adjudicated and unadjudicated claims." Patently there is none. The claim is for an undisputed bill for goods sold and delivered and services rendered. The counterclaim is for a fire loss allegedly caused by other equipment. The fire occurred before the goods were sold and delivered or the services rendered. This factor relates only to attempts to fragment litigation over single claims or single transactions.
 
 
 46
 (2) "The possibility that the need for review might or might not be mooted by future developments in the district court." The appeal will not be mooted until the undisputed bill is paid. It will not be paid so long as there is any possibility that the assertion of the unrelated counterclaim can delay execution. This is not a Panichella situation.
 
 
 47
 (3) "The possibility that the reviewing court might be obliged to consider the same issue a second time." There is no such possibility. The Only significant issue tendered by the appeal of Philadelphia Electric Company, which the majority relegates to footnote 13, and leaves undecided, is by its very nature incapable of dual consideration.
 
 
 48
 (4) "The presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final." This "factor" is not A factor, but The issue. As authority for this "factor" the majority cites TPO Inc. v. FDIC, supra, which deals with Rule 56, not Rule 54(b), and with an affirmative defense and a compulsory counterclaim alleging fraud in the inducement of the very transaction.
 
 
 49
 (5) "Miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity, competing claims, expense, and the like." Distributing these miscellaneous factors we observe:
 
 
 50
 (a) "delay". Certainly Allis-Chalmers is being delayed in collecting an undisputed bill. No one else is being delayed at anything.
 
 
 51
 (b) "economic and solvency considerations". To whose economic and solvency considerations does the majority refer? And how would those considerations, whatever they may be, militate against the payment of an undisputed past due bill? If the utility has economic problems that make payment of its bills difficult, it can resort either to the public utility commission or to a reorganization court. If the economic and solvency considerations relate to Allis-Chalmers, to which the undisputed bill is past due, certainly it should not be forced to wait, thus aggravating its situation.[15](c) "shortening the time of trial". In this case since the Allis-Chalmers bill is undisputed the trial will be neither longer nor shorter. Satisfaction of the undisputed bill, however, will be later.
 
 
 52
 (d) "frivolity of competing claims". There are no "competing" claims. The two claims are separate and unrelated. If the district judge had found the counterclaim to be frivolous he would have entered summary judgment on it and disposed of the whole litigation. The court can not find the Allis-Chalmers' claim frivolous since on the pleadings in response to the Rule 56 motion it was conceded.
 
 
 53
 (e) "expense and the like". The only "expense" of which I am aware is the interest expense to Allis-Chalmers for carrying on its books, unpaid, a $497,742.70 undisputed account receivable. That factor points in only one direction.
 
 Turning to the majority's questions:
 
 54
 (1) "Is PECO's financial condition such that AC might in any way be prejudiced by postponing execution on its judgment until PECO's counterclaim was fully adjudicated?" Will the answer to this question require an evidentiary hearing? When the determination is made, how will it bear, if at all, upon the policies assumed to favor the final judgment rule?
 
 
 55
 (2) "Conversely, is AC's financial condition such that PECO might be prejudiced if AC was allowed immediate execution on its judgment before adjudication of PECO's counterclaim?" To restate the question, would PECO, which had a fire in January 1972, and which after the fire prevailed on Allis-Chalmers to deliver $497,742.70 in goods and services, now be heard to assert that it should be permitted to withhold payment as security for an unliquidated and disputed claim growing out of the fire, and thus by self-help put itself in the position of a preferred creditor over other creditors of Allis-Chalmers? If this court is a court of conscience I hardly think so. Nor would we be enlightened by the district court's view on that issue.
 
 
 56
 (3) "Is PECO's counterclaim frivolous, facially defective, or otherwise legally deficient?" If it was, we would not have this case because a Rule 56 or Rule 12 motion would have been granted. This question is simply irrelevant.
 
 
 57
 (4) "What would be the effect of, and the necessity for, immediate execution prior to the complete adjudication of all claims?" The effect would be that Philadelphia Electric Company would pay the undisputed bill and litigate the unrelated counterclaim. The effect of such payment on the financial condition of Philadelphia Electric Company would be considered in proceedings under Rule 62(h), Fed.R.Civ.P., and Rule 8, Fed.R.App.P.
 
 
 58
 (5) "Is there any reason why the PECO claim should not be fully adjudicated, and to the extent of any recovery, be set-off against the judgment of AC?" The treasurers of the respective litigants can suggest one; the prevailing interest rates. But more significantly, if a utility company has a fire in the future what equipment supplier whose equipment may have been somehow involved in the fire will run the risk of supplying it with replacement equipment on any but a C.O.D. basis? Clearly Allis-Chalmers will not be burned twice.
 
 
 59
 (6) "Do these considerations of solvency, equity (regarding potential priorities in judgment), or other economic factors (including possible duress) weigh for or against final certification of the AC judgment?" To put the question another way, in deciding whether a final judgment should be entered on an undisputed claim for payment for goods and services, to which a permissive unrelated counterclaim has been filed, must the district court, in making a Rule 54(b) determination, conduct a trial within a trial on issues such as the relative solvency of the parties, the competing interests of secured and unsecured creditors of the parties, and the general economic climate?
 
 
 60
 It is interesting that none of the majority's factors or questions were tendered to the district court in opposition to the entry of a final judgment, and none of the majority's factors or questions were tendered to us by the appellant. Yet the majority chooses to relegate to footnote 13 the only real issue tendered by appellant, and to write an advisory interpretation of Rule 54(b) completely unrelated to that actual issue.
 
 
 61
 V. THE PRINCIPAL ISSUE TENDERED BY THE APPELLANT
 
 
 62
 The gravamen of Philadelphia Electric Company's appeal is that under Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) the federal courts in a diversity case must accept the Pennsylvania definition of judicial unit for purposes of finality, rather than apply federal standards. Relying on the Defalcation Act of 1705, 12 P.S. § 601, it asserts that in Pennsylvania a defendant can set-off a contractual claim, whether related or not, so that only one judgment is entered. The contractual claim is that Allis-Chalmers supplied switching gear which in breach of an implied warranty failed and caused the fire in January 1972. Acknowledging that by federal standards the Allis-Chalmers claim was ripe for summary judgment pursuant to Rule 56, appellant argues that Erie v. Tompkins requires the application of Pennsylvania not federal law. This is the main issue which was tendered to and decided by the district court, and which the majority relegates to a footnote.
 
 
 63
 The district court concluded that the case was controlled by Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) rather than by Erie v. Tompkins. I agree. I know of no case invalidating a provision of the Federal Rules of Civil Procedure in a diversity context because of a conflict with a state rule of practice. If, as appellant urges, state practice will in diversity cases control the definition of judicial unit for purposes of finality, then state practice will in effect control the appellate jurisdiction of this court. In this case the appellant urges a state law definition of judicial unit which would result in nonfinality. But if we must accept the Pennsylvania definition of judicial unit for purposes of nonfinality we must also, I would assume, accept the Pennsylvania definition for purposes of finality. Federal law as to what orders are final and thus appealable cannot turn on the vagaries of state law. A uniform federal standard is required.
 
 VI. THE RULE 62(h) CONTENTION
 
 64
 As an alternative to its Erie v. Tompkins position, Philadelphia Electric Company urges that even if federal rather than Pennsylvania law controlled the definition of judicial unit, the district court should, pursuant to Rule 62(h) Fed.R.Civ.P., stay enforcement of the judgment. The Rule 62(h) contention is interrelated with the Rule 54(b) contention, since when Rule 54(b) was amended in 1946 the last sentence of that rule became Rule 62(h). See 7 J. Moore, Federal Practice P 62.10, at 62.40-42 (2d ed. 1974). The Rule 62(h) motion was alternative, and assumed the propriety of the Rule 54(b) order. The district court held that the pendency of a permissive and unrelated counterclaim was not alone a reason for staying execution. No other reason for a stay of execution was tendered by appellant. None of the comparative solvency grounds which fascinate the majority were urged. Philadelphia Electric urged in the district court, and urges now, that it is entitled to a stay as a matter of law principally because of the pendency of the permissive counterclaim. It did not even tender conditions which would secure to Allis-Chalmers the benefit of its judgment, as Rule 62(h) suggests. It did not do so for the obvious reason that the comparative solvency issues of which the majority makes so much were not thought to be relevant to its legal position. The district court certainly did not abuse its discretion in refusing to stay execution of the final judgment on the Allis-Chalmers undisputed claim for the reason that a permissive counterclaim was pending. That, aside from the Erie v. Tompkins point, is the only issue before this court.
 
 
 65
 Rule 62(h) serves to illuminate the degree to which the majority opinion will bring total confusion to the area of the Federal Rules which it addresses. Many of the factors and questions which it propounds might be appropriate to the review of a Rule 62(h) determination. That rule must be considered in the light of Rule 8, Fed.R.App.P. But the standards relating to stay of execution and the standards relating to finality have by the majority opinion been reduced for this circuit to a hopeless jumble. The separation of the two problems in the 1946 amendments to the Federal Rules obviously was intended to discourage just such a result.
 
 VII. CONCLUSION
 
 66
 I would affirm the district court holding that federal law rather than Pennsylvania law provided the appropriate rule of decision for defining a judicial unit under Rule 54(b). I would affirm, as well, the district court holding that a separate claim to which a permissive counterclaim has been filed is an appropriate judicial unit. I would hold that the district court did not abuse its discretion in denying appellant's Rule 62(h) motion for a stay of execution on the sole ground that a permissive unrelated counterclaim was pending.
 
 
 
 [1]
 This disposition makes it unnecessary for us to reach the merits of the grant of summary judgment. Nor do we consider defendant's challenge to the district court's apparent refusal to stay execution of the judgment. We note, however, that although the district court referred to defendant's request for a stay of execution in its Memorandum Opinion of July 19, 1974, no order denying the defendant's motion for a stay was ever entered
 
 
 [2]
 The record before us contains two affidavits submitted by AC in support of its motion for summary judgment. These affidavits establish the total amount claimed by AC as $497,742.70. PECO filed no answering affidavit addressed to this claim. See Tunnell v. Wiley, 514 F.2d 971 (3d Cir. April 1, 1975)
 
 
 [3]
 In its answer to PECO's counterclaim, AC denied PECO's allegations of negligence and breach of warranty. AC also impleaded Westinghouse Electric Corporation as a third-party defendant. The third-party claim, as well as the counterclaim, has yet to be adjudicated in the district court and remains pending
 
 
 [4]
 Fed.R.Civ.P. 54(b) provides:
 (b) Judgment upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.
 
 
 [5]
 This is not the only occasion on which we have referred to the requirement that the district court specify the reasons for a discretionary judgment. See, e. g., Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3d Cir. 1973) (factors affecting a transfer of venue); Lindy Bros. Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir. 1973) and Merola v. Atlantic Richfield Co., 483 F.2d 292 (3d Cir. 1974), Following remand, 515 F.2d 165 (3d Cir. April 29, 1975) (factors affecting an award of attorney's fees); Bryan v. Pittsburg Plate Glass Co., 494 F.2d 799 (3d Cir. 1974) (factors affecting court approval of class action settlement). Accord, City of Detroit v. Grinnel Corp., 495 F.2d 448 (2d Cir. 1974)
 
 
 [6]
 Our listing of these factors is for purpose of illustration and should not be considered all-inclusive
 
 
 [7]
 See Cold Metal Process Co. v. United Engineering & Foundry Co., 351 U.S. 445, 76 S.Ct. 904, 100 L.Ed. 1311 (1956), Panichella, supra
 
 
 [8]
 Panichella, supra at 455
 
 
 [9]
 Panichella, supra at 455
 
 
 [10]
 TPO Incorporated v. Federal Deposit Insurance Corporation, 487 F.2d 131, 134 (3d Cir. 1973)
 
 
 [11]
 See Campbell v. Westmoreland Farm, Inc., 403 F.2d 939 (2d Cir. 1968); 6 J. Moore, Federal Practice P 54.41(3) (2d ed. 1974)
 
 
 [12]
 See Wright & Miller, Federal Practice and Procedure: Civil § 2659 (1973)
 
 
 [13]
 In opposing summary judgment, PECO argues that, as a matter of substantive law, Pennsylvania's Defalcation Act, 12 P.S. § 601, requires that PECO's counterclaim must be "Netted" against AC's main claim; and, accordingly, that no judgment could be entered on the main claim prior to the counterclaim's determination. We neither reach nor resolve this issue
 
 
 [14]
 In referring to "unusual or harsh circumstances", in this context, we have particular reference to our previous discussion of factors involving considerations of solvency, economic duress, etc. which bear upon the district court's discretion in granting final certification. See P. 364, Supra
 
 
 [15]
 There is the further distinction that in TPO Incorporated the precise issue was whether summary judgment was improvidently granted while in the present case we do not question the grant of summary judgment but only the 54(b) certification
 
 
 [16]
 Notwithstanding the stridency of the dissent, our holding is not that this was an improper case for Rule 54(b) certification. We have remanded Only For a Statement of reasons So that this Court may properly determine if this was "the infrequent harsh case" warranting final certification within the meaning of Panichella, supra at 455. Such review by this Court is not, as the dissent suggests, ". . . an unprecedented and unwarranted interpretation of Rule 54(b) . . .." This precise practice has been followed by this Court for over a quarter of a century. Panichella, supra. Indeed, the dissent's statement, that ". . . Rule 54(b) does not give this Court authority to decline to hear an appeal from a final decision in a separate claim as to which the district court has directed the entry of judgment . . .," is not only a misstatement of controlling case law, but is also contradicted by the dissent in its later, grudging recognition of the viability of the Panichella rule. See p. 363, Supra
 We express no opinion on the dissent's analysis of the factors to be considered by the district court because, in the view we take, that is a proper function for the district court. Our consideration of such factors is only to determine whether the district court abused its discretion in granting final certification. Insofar as the dissent suggests that our holding will ". . . have the effect of requiring a written opinion for every Rule 54(b) certification" containing a "laundry list" of "specific findings", we note only that we require no more than a statement of the reasons for granting final certification. This is no more or less than we have required in other areas where the district court's exercise of discretion is subject to appellate review. See n. 5 Supra.
 
 
 [1]
 77 Eng.Rep. 1193 (K.B.)
 
 
 [2]
 Holcombe v. McKusick, 61 U.S. (20 How.) 552, 15 L.Ed. 1020 (1857); United States v. Girault, 52 U.S. (11 How.) 22, 13 L.Ed. 587 (1850)
 
 
 [3]
 Collins v. Miller, 252 U.S. 364, 40 S.Ct. 347, 64 L.Ed. 616 (1920); Ex parte National Enameling & Stamping Co., 201 U.S. 156, 26 S.Ct. 404, 50 L.Ed. 707 (1906)
 
 
 [4]
 Bowker v. United States, 186 U.S. 135, 22 S.Ct. 802, 46 L.Ed. 1090 (1902)
 
 
 [5]
 Hohorst v. Hamburg-American Packet Co., 148 U.S. 262, 13 S.Ct. 590, 37 L.Ed. 443 (1893) (joint liability); United States v. Girault, 52 U.S. (11 How.) 22, 13 L.Ed. 587 (1850) (secondary liability)
 
 
 [6]
 Cf. Bank of Rondout v. Smith, 156 U.S. 330, 15 S.Ct. 358, 39 L.Ed. 441 (1895)
 
 
 [7]
 United States v. River Rouge Co., 269 U.S. 411, 46 S.Ct. 144, 70 L.Ed. 339 (1926); Republic of China v. American Express Co., 190 F.2d 334, 335-36 (2d Cir. 1951)
 
 
 [8]
 See Reeves v. Beardall, 316 U.S. 283, 62 S.Ct. 1085, 86 L.Ed. 1478 (1942)
 
 
 [9]
 See Audi Vision Inc. v. RCA Mfg. Co., 136 F.2d 621 (2d Cir. 1943)
 
 
 [10]
 See Toomey v. Toomey, 80 U.S.App.D.C. 77, 149 F.2d 19, 20 (1945)
 
 
 [11]
 See generally 6 J. Moore, Federal Practice P 54.26, at 301 Et seq. (2d ed. 1974)
 
 
 [12]
 RePass v. Vreeland, 357 F.2d 801 (3d Cir. 1966), relied on by the majority, is a case of partial adjudication of a single claim
 
 
 [13]
 The Supreme Court so held in Cold Metal Process Co. v. United Eng'r & Foundry Co., 351 U.S. 445, 76 S.Ct. 904, 100 L.Ed. 1311 (1956)
 
 
 [14]
 The rule refers to a direction to enter final judgment rather than to a certification. Contrast 28 U.S.C. § 1292(b)
 
 
 [15]
 Since the ground of decision is the majority's own frolic, there is no suggestion in the record that economic or solvency considerations of either party have anything to do with the case. It is interesting to speculate how the district court will make a record on this "factor." Perhaps a hearing on the comparative solvency of the parties will be necessary. If Allis-Chalmers is insured for liability for the fire loss must it nevertheless wait to collect its account receivable? Will its carrier be liable for interest? What will be the effect of a determination that Philadelphia Electric Company is insured in whole or part for the fire loss and the counterclaim is in whole or part a subrogation claim? How do these factors interrelate? All that is certain is that compliance with the court's interpretation of Rule 54(b) will not simplify things for the district courts