**MYERS & WATTERS COMPANY**

v.

**E. I. duPONT de NEMOURS & CO.**

**Civ. A. No. 76–1253.**

United States District Court,
E. D. Pennsylvania.

April 17, 1978.

Richard M. Jordan, Philadelphia, Pa., for plaintiff.

Nancy J. Gellman, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

On December 29, 1977, we filed an order granting defendant's motion for partial summary judgment on Count III of plaintiff's complaint (alleging trade libel) and Count II of defendant's counterclaim (plaintiff's obligation to pay for paint delivered to plaintiff by defendant). We denied the remainder of the parties' motions for summary judgment on the complaint and the counterclaim. Thus, several claims remain for trial.[1] Plaintiff has moved for entry of final judgment and certification pursuant to Fed.R.Civ.P. 54(b) of the summary judgment ruling on Count III of the complaint and Count II of the counterclaim. For the reasons stated below, the motion shall be denied.

---

1. One of the claims, Count II of plaintiff's complaint alleging interference with contractual relations, may drop out of the case, but that has little effect since several issues of contractual interpretation remain.

Rule 54(b) authorizes a district court to certify selected claims for appeal where not all of the claims in the case have been disposed of finally. Certification under the rule requires an "express determination that there is no just reason for delay and . . . an express direction for the entry of judgment." The purpose underlying the rule "is to avoid the possible injustice of a delay in entering judgment on a distinctly separate claim or as to fewer than all parties until the final adjudication of the entire case by making an immediate appeal available." 10 Wright & Miller, Federal Practice and Procedure: Civil § 2654 (1973).

The leading case in this circuit providing focus to the language of Rule 54(b) is *Allis-Chalmers Corp. v. Philadelphia Electric Co.*, 521 F.2d 360 (3d Cir. 1975). The Court of Appeals noted that generally the rule certification was only to be granted in the "infrequent harsh case". *Id.* at 363, 365, 367. "[T]he burden is on the party seeking final certification to convince the district court that the case is 'the infrequent harsh case' meriting a favorable exercise of discretion." *Id.* at 365. The court supplied several factors to be assessed in determining whether a case was appropriate for Rule 54(b) treatment:

1. the relationship between the adjudicated and unadjudicated claims;
2. the possibility that the need for review might or might not be mooted by future developments in the district court;
3. the possibility that the reviewing court might be obliged to consider the same issue a second time;
4. the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final;
5. miscellaneous factors such as delay, economic and solvency considerations, shortening the time for trial, frivolity of competing claims, expense and the like.

*Id.* at 364 (footnotes omitted).

Plaintiff contends that it has met all the criteria stated above and thus has carried its "burden of showing some danger of hardship or injustice through delay which would be alleviated by immediate 54(b) certification." *Id.* at 366. However, an analysis of the issues in this case in light of *Allis-Chalmers* convinces us that certification should not be granted.

The most compelling factor weighing against plaintiff's position is the emphasis that the *Allis-Chalmers* court placed upon the existence of a claim or counterclaim which could form the basis for a set-off. The Court of Appeals stated:

"[I]n the absence of unusual or harsh circumstances, we believe that the presence of a counterclaim, which could result in a set-off against any amounts due and owing to plaintiff, weighs heavily against the grant of 54(b) certification."

*Id.* at 366. In this case, a set-off was contemplated by the parties as evidenced by paragraphs 6 and 7 of the contract. Any amount owed to defendant for the paint withheld will reduce any recovery for breach of contract secured by plaintiff.

Defendant contends that any consideration of the set-off factor should be qualified since the paint claim is unrelated factually to the breach of contract claim. This contention, however, was rejected by the *Allis-Chalmers* court. Rather than relying upon the relationship between the potentially off-setting claims, the court's primary concern was based upon the possibility that a party will have to pay over monies to its opponent only to be reimbursed if the first party prevails on its as yet unadjudicated claim. *Id.*

The second factor favoring denial of plaintiff's motion is the relationship which exists between the breach of contract claim and the plaintiff's defamation action. Both arise out of the same dispute over an interpretation of the sandblasting specifications provided in the contract. Indeed, the alleged defamatory statement by defendant is that plaintiff failed to comply with these specifications. Assuming that plaintiff's complaint sounds in defamation rather than trade libel for product disparagement, the plaintiff must establish the falsity of this

statement. See Restatement (Second) of Torts § 588 (1977). If the jury finds for the defendant on plaintiff's breach of contract claim by adopting duPont's interpretation of the contract, this will moot plaintiff's defamation claim.

Finally, plaintiff asserts that certification is supported by miscellaneous factors cited by the *Allis-Chalmers* court such as harm generated by delaying the appeal, economic duress, and the non-frivolity of the claims. An assessment of these concerns on the facts of this case, however, does not support certification. While the vigor with which plaintiff has pursued these issues may attest to the non-frivolity of the underlying claims, we can foresee no harm which will result from delaying the appeal from our ruling on the summary judgment motions. Plaintiff claims it will be hurt by a delay in its attempt to clean the alleged smear off its record. Any vindication of plaintiff's corporate integrity, however, will be achieved by the jury's resolution of the breach of contract claim. Furthermore, while there may be a disparity in the assets held by the parties, plaintiff is a substantial commercial enterprise with sufficient wherewithal to see this litigation through to the end. Economic duress or solvency are not factors in this case.

In sum, we conclude that neither the criteria cited by the Third Circuit nor the interests of justice require that this case be certified under Fed.R.Civ.P. 54(b). Therefore, plaintiff's motion will be denied.

## ON MOTION FOR SUMMARY JUDGMENT ON COUNT II

HUYETT, District Judge.

Count II of plaintiff's complaint alleges a cause of action based upon defendant's interference with plaintiff's prospective contractual relations at the BP Marcus Hook Refinery. Earlier, we held defendant's motion for summary judgment on this Count under advisement while we permitted plaintiff to take additional discovery in an attempt to show actual harm flowing from the alleged interference. Plaintiff has completed its discovery and defendant now has renewed its motion for summary judgment on Count II. For the reasons that follow, we will grant the motion.

■ In order to make out the tort of interference with prospective contractual relations, plaintiff must establish each of the following four elements:

1. reasonable probability of a prospective contractual relation;
2. intent of defendant to harm plaintiff by preventing this relationship from occurring;
3. absence of privilege or justification by defendant;
4. actual harm or damage.

*Glenn v. Point Park College,* 441 Pa. 474, 272 A.2d 895, 898–99 (1971). If plaintiff fails to raise a genuine issue of material fact with respect to any one of these elements, defendant's motion must be granted.

In its letter of February 8, 1978 informing the Court of the completion of the additional discovery contemplated by the Order of December 28, 1977, plaintiff stated that "it is not possible for the plaintiff at this time to demonstrate a substantial loss of profits on prospective contracts." We agree with plaintiff's candid assessment. First, it is undisputed that plaintiff has been invited to bid on non-MPS painting work and has been awarded two painting contracts at the BP Refinery since August, 1975. Furthermore, it is clear that any decisions not to invite bids from plaintiff on other work were based upon business reasons unconnected with any actions or statements of defendant.

Plaintiff contends that discrepancies between Mr. Heidengren's affidavit and his deposition raise credibility questions which may only be resolved by the jury. However, neither of the alleged inconsistencies cited by plaintiff alters plaintiff's statement in its February 8, 1978 letter or the undisputed fact that plaintiff continued to obtain non-MPS work from the BP Refinery. Also, the alleged inconsistencies do not suggest any connection between defendant's conduct and the awarding of contracts at the BP Refinery.

In sum, plaintiff has produced no evidence to contradict defendant's showing that plaintiff was not prevented from bidding or procuring any painting contracts due to defendant's actions or statements. Indeed, defendant's contentions are supported by plaintiff's statement in its February 8, 1978 letter. Thus, the plaintiff has failed to show a necessary element to the cause of action alleged in Count II, that is, any actual harm or loss stemming from defendant's conduct. Therefore, defendant's motion for summary judgment on Count II must be granted.