**UNITED BANK OF PUEBLO,**
**Plaintiff-Appellee,**

v.

**HARTFORD ACCIDENT & INDEMNITY COMPANY, Defendant-Third-Party Plaintiff-Appellant,**

v.

**UNITED BANK OF DENVER,**
**Third-Party Defendant.**

**No. 74–1875.**

United States Court of Appeals,
Tenth Circuit.

Argued Sept. 2, 1975.

Decided Jan. 30, 1976.

Andrew J. Friedrich, Denver, Colo. (H. Gayle Weller and John R. Hickisch, Weller, Friedrich, Hickisch & Hazlit, Denver, Colo., on the brief), for appellant.

James V. Phelps, Pueblo, Colo. (Faricy, Tursi, Phelps, Shepherd & Ballas, Pueblo, Colo., on the brief), for appellee.

Before LEWIS, Chief Judge and SETH and McWILLIAMS, Circuit Judges.

LEWIS, Chief Judge.

This case arose from Hartford's denial of coverage under a banker's blanket bond issued to the United Bank of Pueblo (Pueblo bank) for a cash letter stolen while being transported to the United Bank of Denver (Denver bank). The district court for the District of Colorado held that the loss was covered by insurance and entered judgment against Hartford for $51,963.37, later reduced by $2,500.00, the amount of the bond's deductible.

The case was submitted on stipulated facts. On August 24, 1970, the Pueblo bank prepared a cash letter of around 2,200 checks worth $891,228.32 for delivery to the Denver bank. Prior to sending the cash letter, a transit letter deposit slip, filled out in triplicate, was addressed: "To: Check Processing Center, United Bank of Denver National Association, P.O. Box 5848, Denver, Colorado 80217." The Pueblo bank retained one copy of the deposit slip, sealed the other two in the bag with the cash letter, and delivered the bag to Continental Trailways in Pueblo, for shipment to the "Denver U.S. National Bank, Denver, Colorado" as consignee.

When the sealed bag arrived at the Continental Trailways' office in Denver, employees of the bus line notified the Denver bank of its presence. The Den-

ver bank sent Mr. Blinde, an employee in the bank's mail room, to retrieve the bag. Blinde left from the bank's Lincoln Street entrance and proceeded to the bus company's office at Seventeenth and Broadway, a distance of approximately 150 yards.

After executing a receipt to the bus company, Blinde commenced his return to the bank via the bank's outdoor mall. Since it was approximately 11:00 p.m., the only entrance open was the Lincoln Street entrance. Before reaching this entrance, Blinde was assaulted by two unknown men who stole the cash letter. While the cash letter was never recovered, the Pueblo bank was able to reduce its loss to $46,931.71, expending $5,031.66 to do so.

The issue before the trial court which is the subject of this appeal was:

[W]ere the checks, at the time they were stolen, in the custody of a person acting as a messenger, as required by the "In Transit" clause, as Plaintiff contends, or, as contended by the Defendant, did the delivery of the checks at the bus station to Mr. Blinde, a mail room employee of the Denver U.S. National Bank, constitute a delivery of the checks "at destination", and, at that point, terminate the policy liability?

In response to this issue, the trial court made the following conclusion of law:

2. At the time the checks were stolen they were "in transit" within the meaning of the policy. The transit letter (Exhibit "C") stated the destination for delivery to be "Check Processing Center" of the Denver United States National Bank. The checks never reached the processing center and the delivery of the checks to a mail room employee of the Denver U.S. National Bank was a delivery to him as a messenger and cannot properly be construed as a delivery "at destination".

## I

■ Initially, Hartford filed a third-party complaint against the United Bank of Denver which was severed from the original complaint for purposes of the trial. In October 1974, more than 10 months after judgment had been entered against Hartford in the original action, the third-party action had yet to go to trial and the Pueblo bank moved for an entry of final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, a motion which was granted. Hartford contends that the trial court erred in granting the Pueblo bank's motion for entry of a final judgment pursuant to Rule 54(b). In directing the entry of a final judgment as to the claim between United Bank of Pueblo and Hartford, the trial court "expressly determined . . . that there was no just reason for delay." We note that the trial court correctly followed the outlined procedures in certifying a final judgment under Rule 54(b), but this does not necessarily indicate that the certification was proper. On review, this court may examine whether the district court's conclusion that there was not just reason for delay was an abuse of the trial court's discretion. *Gas-A-Car, Inc. v. American Petrofina, Inc.*, 10 Cir., 484 F.2d 1102, 1104–05; *F & D Property Co. v. Alkire*, 10 Cir., 385 F.2d 97, 101.

■ No precise test has been developed for determining whether just cause exists for delay, but generally courts have weighed Rule 54(b)'s policy of preventing piecemeal appeals against the hardship or injustice that might be inflicted on a litigant because of the delay. *Gas-A-Car, Inc. v. American Petrofina, Inc.*, 10 Cir., 484 F.2d at 1105. The record reveals several factors upon which the trial court seemed to rely in granting the Pueblo bank's Rule 54(b) motion. For example, the court emphasized the separate nature of the principal claim and the third-party claim, commenting that the two claims had been severed for trial and that the claims were not similar except as to their factual basis. Furthermore, the district court appeared concerned that pending a final judgment in the action, the Pueblo bank was being paid 6 percent interest on its $50,000

judgment, whereas the prime interest rate was 11 percent. Undoubtedly, the then 10-month delay in collecting its judgment was creating a financial injustice for the Pueblo bank.

Finally, the court concluded that since the third-party action between Hartford and the United Bank of Denver depended on whether Hartford was liable to the Pueblo bank, it would facilitate the trial on the third-party action if final judgment was entered in the principal claim. If the trial court's finding that Hartford was liable was reversed on appeal, the third-party action would be moot. If, on the other hand, the trial court's determination was upheld, then the issues for the third-party action would be clearly focused and not muddled by a potential reversal of the determination in the principal claim. In a similar situation, this court determined that it is proper to grant a Rule 54(b) motion where a failure to do so "would necessitate a piecemeal approach at the trial level." *Gas-A-Car, Inc. v. American Petrofina, Inc.*, 10 Cir., 484 F.2d at 1105. We conclude from the factors utilized by the court that it did not abuse its discretion in granting the Rule 54(b) motion.

## II

The main question raised by Hartford on this appeal is whether the district court properly interpreted the meaning of the "in transit" clause of the banker's blanket bond, specifically the meaning of "messenger" and "delivery at destination." The "in transit" clause provided for the following coverage:

(C) Any loss of Property (occurring with or without negligence) through robbery, common-law or statutory larceny, theft, hold-up, misplacement, mysterious unexplainable disappearance, being lost or otherwise made away with, damage thereto or destruction thereof, and any loss of subscription, conversion, redemption or deposit privileges through the misplacement or loss of Property, *while the Property is in transit anywhere in the custody* of any of the Employees or partners of the Insured *or of any other person or persons acting as messenger*, except while in the mail or with a carrier for hire other than an armored motor vehicle company for the purpose of transportation, such transit to begin immediately upon receipt of such Property by the transporting Employee or partner or such other person, and *to end immediately upon delivery thereof at destination.*

(Emphasis added.)

In reviewing whether the district court correctly interpreted the insurance contract existing between Hartford and the United Bank of Pueblo, Colorado's conflict of laws rule will determine the applicable law. *Mills v. Hoflich*, 10 Cir., 465 F.2d 29, 30; *Stemple v. Phillips Petroleum Co.*, 10 Cir., 430 F.2d 178, 183. In Colorado, contracts will be construed according to the law of the place of making, in this case, Colorado. *Western Enterprises, Inc. v. Robo-Sales, Inc.*, 28 Colo.App. 157, 470 P.2d 931, 932–33.

We must review the trial court's interpretation of two terms in the United Bank of Pueblo's banker's blanket bond—"delivery at destination" and "messenger." "Delivery" is a legal term of art, but its legal meaning in this instance has been qualified by the accompanying phrase "at destination." Under Colorado law, the words used in an insurance contract should be interpreted according to their ordinary and obvious meaning absent a showing of ambiguity. *Reed v. United States Fidelity & Guar. Co.*, 176 Colo. 568, 491 P.2d 1377, 1379.

"Destination" is an unambiguous, ordinary word susceptible to a dictionary definition: "A place which is set for the end of a journey or to which something is sent; place or point aimed at . . . ." *Webster's Third New International Dictionary* (1971). While the meaning of "destination" is clear, in the present case the intended journey's end is somewhat uncertain. The district court determined that the destination of the cash letter was the check processing center of the Denver bank. The transit

letter deposit slip, which was sealed in the mail bag with the cash letter, was addressed: "To: Check Processing Center, United Bank of Denver National Association, P.O. Box 5848, Denver, Colorado 80217." The mail bag was addressed to "Denver U.S. National Bank, Denver, Colorado" as consignee. Without deciding whether the check processing center or the bank itself was the destination, we can safely conclude that the United Bank of Pueblo at least intended delivery be made at the bank and not at the bus station or some point in between.

Having determined at the very least that the bank itself was the intended destination of the cash letter, the next step in the analysis is to decide if delivery occurred and where. Basically, Hartford asserts that the delivery occurred in the bus station when Mr. Blinde received the cash letter and executed the receipt, signing it "Denver U.S. by WSB." While this may have been adequate to constitute a delivery if the bond had merely specified delivery, we do not think that it amounts to "delivery at destination."

Hartford argues alternatively that even if "delivery at destination" should be viewed as a geographical location, the cash letter was already delivered at the bank because Blinde was on the bank's outdoor mall when robbed. We do not agree. The destination was not the exterior premises of the bank. Regardless of whether the check processing center or the bank generally was the destination of the cash letter, we conclude that delivery at destination could not have occurred prior to Blinde's actually entering into the bank's building.

Even though delivery had not yet occurred, the loss was not covered unless the lost property was "in the custody of any of the Employees or partners of the Insured [United Bank of Pueblo] or of any other person or persons acting as messenger . . . ." The trial court concluded that Mr. Blinde, the Denver bank mail room employee, was a messenger for the purposes of the "in transit" clause and therefore the loss was covered by the blanket bond. To determine the correctness of this interpretation, we turn to two Colorado rules of construction for assistance: (1) insurance policies must be construed with a view to carrying out the intention of the parties, *Spillane v. United States Fidelity & Guar. Co.*, 137 Colo. 385, 325 P.2d 700, 704; and (2) where there is ambiguity or uncertainty with respect to coverage, construction will favor the insured, *Beeson v. State Auto. & Cas. Underwriters*, 32 Colo.App. 62, 508 P.2d 402, 406, *aff'd*, 183 Colo. 284, 516 P.2d 623.

The apparent purpose of the "in transit" clause was to protect the bank against loss of property while being transported from the bank to a designated destination, but the coverage specifically excluded the time while the property was in the mail or in the custody of a carrier for hire. In other words, the clause was intended to cover possible gaps in the transportation of the property—intervals when the property, while still in transit, was not in the possession of a carrier or in the mail. The instant case is an example of one such possible gap—the loss occurred after the carrier relinquished possession of the property, but prior to the arrival of the cash letter at its specified destination.

However, the property must not only be lost in one of these gaps prior to delivery at destination, but it must be lost while in the "custody" of an employee or partner of the insured or "any other person or persons acting as messenger . . . ." The main problem with defining "messenger" is that it is not a legal term of art representing a special, recognized legal status such as the words "agent" or "bailee." Using a process of definition through elimination, we can determine that because the policy specifically covered employees and partners, one can be a messenger without being an employee or partner. Likewise, if the insurance company had intended that a "messenger" must be an agent or bailee of the insured, it would have employed such a term of art to describe the relationship. It is reasonable, therefore,

to conclude that the insurance company employed a general term like "messenger" to describe the many possible persons who might have "custody" of the "in transit" property during one of the gaps in the transportation process. In this context, Blinde, even though an employee of the Denver bank, may also be considered a person acting as a messenger for the Pueblo bank in completing the delivery of the cash letter.

In sum, after reviewing the ordinary meaning of "destination," the context in which "destination" and "messenger" were employed, and the intended scope of the "in transit" coverage, we conclude that the district court did not err in holding that the loss of the cash letter was insured.

Judgment affirmed.