**CURTISS–WRIGHT CORPORATION**

v.

**GENERAL ELECTRIC COMPANY,**
**Appellant.**

Nos. 78–2179, 78–2293.

United States Court of Appeals,
Third Circuit.

Argued March 22, 1979.

Decided April 17, 1979.

As Amended May 11 and May 21, 1979.

Rehearing and Rehearing In Banc
Denied June 4, 1979.
See 599 F.2d 1259.

Isaac N. Groner (argued), Walter H. Fleischer, Alfred F. Belcuore, Cole & Groner, P.C., Washington, D.C., Albert G. Besser, Hannoch, Weisman, Stern & Besser, P.A., Newark, N.J., for appellant; Jamie H. Gearon, General Electric Co., Schenectady, N.Y., of counsel.

Ralph N. DelDeo (argued), Richard S. Zackin, Gerard C. Sims, Jr., Crummy, DelDeo, Dolan & Purcell, Newark, N.J., for appellee.

Before SEITZ, Chief Judge, and ALDISERT and ROSENN, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM.

In a diversity action by Curtiss-Wright Corp. (Curtiss) against General Electric Company (GE), the district court granted summary judgment to Curtiss on its claims for outstanding balances due on contracts with GE; additional claims arising out of the contractual relationship have not yet been adjudicated. The district court certified that the judgments were final under Rule 54(b) of the Federal Rules of Civil Procedure.

GE appealed the 54(b) judgments. It first contends that the entry of the 54(b) certifications was not consistent with a sound exercise of discretion, and thus requests this court to dismiss the appeals without consideration of the merits.

Curtiss, as subcontractor, entered into 21 subcontracts with GE, prime contractor for the Navy, to build component parts for propulsion systems on nuclear vessels for about $215 million. Most of the claims asserted by Curtiss were based on alleged fraud and misrepresentation by GE which caused cost overruns and prevented Curtiss from making a profit. Three of Curtiss's claims sought payment from GE on the outstanding balances due on the 21 subcontracts. GE counterclaimed for $60 million in costs incurred by it due to Curtiss's alleged failure to perform its contractual obligations competently.

The district court granted summary judgment on the claims for the amount of the outstanding balances and directed GE to pay Curtiss $19 million along with prejudgment interest. It further directed that such judgments were final under Rule 54(b) and stated its reasons for such action.

GE asserts that the entry of the 54(b) certifications under the circumstances of this case was in direct conflict with the rules announced by this court in *Allis-Chalmers Corp. v. Philadelphia Electric Co.*, 521 F.2d 360 (3d Cir. 1975). We address that contention.

In *Allis-Chalmers* this court stressed that certification should be the exception rather than the rule, and delineated illustrative factors governing the trial court's discretion in certifying a judgment as final under 54(b). 521 F.2d at 364. We went on to state:

> In the absence of unusual or harsh circumstances,[14] we believe that the presence of a counterclaim, which could result in a set-off against any amounts due and owing to the plaintiff, weighs heavily against the grant of 54(b) certification.

*Id.* 366. Footnote 14 to the quoted sentence defined unusual or harsh circumstances as those factors "involving considerations of solvency, economic duress, etc."

The district court addressed the general requirements of *Allis-Chalmers* as they applied to this case, stating that the certification would not result in duplicative appellate review because the claims for final payment were totally distinct from the other issues in the case. It felt for the same reasons that the proceedings in the district court could continue pending the appeal and would not moot any determination of the merits of this appeal. The district court also felt that justice in this litigation would be served by certification because Curtiss would suffer daily financial losses from its inability to achieve a greater return on the $19 million judgment than the 6% interest authorized by New York law. The court also concluded that GE could afford to pay and that Curtiss would be able to repay the funds if GE succeeded on its counterclaims.

The practical consideration here is that the court is being asked to say who should have the benefit of the money until the litigation is finally resolved. We think that *Allis-Chalmers* dictates that the matter remain in status quo when non-frivolous counterclaims are pending, and in the absence of unusual or harsh circumstances.

Finally, and of decisive significance, it is tacitly conceded that the only harsh circumstance presented here is Curtiss's inability to use the money from the judgment. The result is indeed harsh from Curtiss's viewpoint, but what if GE prevails on its compulsory counterclaim? How is its loss resulting from the deprivation of the money to be restored? In any event this factor was rejected as controlling in *Allis-Chalmers*. Indeed, this was the primary basis for the dissent in *Allis-Chalmers*. *See* 521 F.2d at 367 (Gibbons, J., dissenting). As a three judge panel, we are bound to apply *Allis-Chalmers* here. *See* Third Circuit Internal Operating Procedures, Chapt. VIII, C.

The appeal will be dismissed for want of an appealable order with a direction to the district court to vacate so much of its judgment as purported to render a final judgment pursuant to. Rule 54(b). Each party shall bear its own costs.

ROSENN, Circuit Judge, dissenting.

I respectfully dissent because I believe that the district court's certification of this appeal under Rule 54(b), Fed.R.Civ.P., was not an abuse of discretion.

Curtiss-Wright Corporation ("Curtiss-Wright") entered into twenty-one subcontracts to deliver components to General Electric Company ("GE"), a prime contractor for the United States, for eventual use in the construction of nuclear naval vessels. In connection with these contracts, Curtiss-Wright brought a suit against GE in which Curtiss-Wright sought damages and reformation of the subcontracts, alleging fraud, misrepresentation, and contractual breaches

by the defendant. GE then withheld the final payments to Curtiss-Wright for the material manufactured and supplied by Curtiss-Wright, and GE interposed counterclaims alleging that Curtiss-Wright had failed to perform competently, and that as a consequence GE was required to render it extraordinary assistance. Curtiss-Wright then added to its complaint three counts seeking the final payments that GE had held back.

Although it is conceded that Curtiss-Wright had manufactured and delivered to GE the components for which the final payments were claimed, and GE did not object to the quality of the parts, GE refused to make the payments.[1] In this refusal, GE relied on a contractual provision which, as GE interpreted it, conditioned the final payments on Curtiss-Wright's release of all claims against GE. Because Curtiss-Wright was suing GE for fraud, misrepresentation, and contractual breaches, it would not assent to any such release. Applying the law of New York in this diversity suit, the district court ruled that, notwithstanding the contractual provision on which GE rested its argument, Curtiss-Wright was entitled to judgment on its claims for the final payments. The partial summary judgment won by Curtiss-Wright amounted to nearly 19 million dollars. The district court then certified its judgment for immediate appeal, while retaining jurisdiction over Curtiss-Wright's other claims and GE's counterclaims.

In *Allis-Chalmers Corp. v. Philadelphia Electric Co.,* 521 F.2d 360 (3d Cir. 1975), this court set out several considerations that a district court should take into account when it rules upon a motion for certification under Rule 54(b). Unless, in weighing these factors, the district court has abused its broad discretion, we may not disturb its decision in favor of certification. *Id.* at 367 n. 16. *See Sears Roebuck & Co. v. Mackey,* 351 U.S. 427, 437, 76 S.Ct. 895, 100 L.Ed. 1297 (1956). The Rule "defines finality in terms of what the district court does and gives this court broad discretion in applying finality." 6 Moore's Fed.Practice ¶ 54.-28[1].[2]

In my judgment, the trial judge identified two considerations of sufficient gravity to justify his exercise of discretion. First, Judge Coolahan noted an economic consideration favoring immediate appeal. *See Allis-Chalmers Corp. v. Philadelphia Electric Co., supra* 521 F.2d at 364. He concluded that Curtiss-Wright, under New York law, can recover prejudgment interest of only six percent. The interest on the award already granted by the district court will continue in the face of the high cost of money to accrue at this comparatively low rate until Curtiss-Wright can execute on its judgment. If this court were to hear the appeal certified by the district court and to sustain the district court's judgment, Curtiss-Wright could execute immediately. Because of the disparity between six percent simple interest and the much higher interest rates now prevalent in the marketplace, Curtiss-Wright will lose (as GE conceded at oral argument) over a million dollars per year until this litigation can be finally con-

---

1. It is undisputed that as of September 23, 1976, Curtiss-Wright had made and General Electric had accepted delivery of all of the large components called for by twelve of the twenty-one subcontracts which formed the basis for the district court's partial summary judgment. By August 28, 1978, GE had accepted delivery of the parts manufactured by Curtiss-Wright under the remaining nine subcontracts.

2. Because federal rules provide extensively for the presentation of numerous claims that are often diverse, unrelated, and involve multiple parties, "it was highly desirable that the district court be given broad powers to enter separate judgments . . . ." 6 Moore's Fed. Practice ¶ 54.22. The Rule gives the trial judge the necessary elasticity because he has first-hand information as to the litigation, its progress, and the timeliness for a separate judgment and appellate review. He is in "an excellent position to determine from the standpoint of justice to the litigants the best time at which to terminate by final judgment the litigation with respect to a single claim in a multiple claims suit and thus to open the way to immediate appellate review and execution of judgment." *Bendix Aviation Corp. v. Glass,* 195 F.2d 267, 272 (3d Cir. 1951) (Maris, J.).

summated. This could conceivably take years to complete.[3]

The Tenth Circuit accepted a similar argument in *United Bank of Pueblo v. Hartford Accident & Indemnity Co.,* 529 F.2d 490 (10th Cir. 1976). The court considered a delay as brief as ten months in collecting a judgment, although very much smaller than the one *sub judice,* to constitute "a financial injustice" in the face of a high interest rate in the market. *Id.* at 493. Judge Coolahan cited that case in support of his certification.

The prediction about Curtiss-Wright's losses assumes that if Curtiss-Wright's judgment were satisfied now, the company, by outside investment of the proceeds, could secure a rate of return approximating the interest available in the market. But Curtiss-Wright might have, as it indicated at oral argument, a more efficient use for the money if it devoted the 19 million dollars to its own operations. Even for a large corporation, such as Curtiss-Wright, a block of capital as great as this can play a significant part in the operations of the company.

This is not to say the district court should certify every money judgment carrying prejudgment interest of less than the market rate. Such a conclusion would conflict with *Allis-Chalmers,* which suggested that a district court ascertain whether the action before it is "the infrequent harsh case" warranting certification. But when the judgment is for a very large sum of money, and the current cost of money is exceptionally high, the substantial loss to the creditor caused by further delay must be weighed by the court. In assessing economic considerations, a district court should weigh the size of the judgment, the degree of disparity between market interest and prejudgment interest, and the importance of the award for the prevailing party, as well as the other considerations recognized by *Allis-*

*Chalmers.*[4] In this case, the district court touched all of these bases.

In putting aside the district court's careful considerations, the majority stresses the existence of GE's counterclaims. It relies on the passage in *Allis-Chalmers* that the presence of a counterclaim, in the absence of unusual or harsh circumstances, "weighs heavily against the grant of 54(b) certification." 521 F.2d at 366. But note 14 of that opinion suggested, without limitation, that "unusual or harsh circumstances" referred to "considerations of solvency, economic duress, etc." In the present case, the majority notes that GE's counterclaims are not frivolous, and it argues that the district court identified no "unusual or harsh circumstances" justifying certification. The disparity of interest rates, it urges, cannot constitute "unusual or harsh circumstances" because "this factor was rejected as controlling in *Allis-Chalmers.*" By this statement the majority evidently means that, despite the presence of losses due to interest rates, *Allis-Chalmers* allowed the possibility that certification there might have been improper. I disagree with the majority's analysis about the effect of GE's counterclaims.

*Allis-Chalmers* did not hold that the deprivation of the use of money would never constitute "unusual or harsh circumstances" outweighing the existence of counterclaims. Indeed, the majority in *Allis-Chalmers* never even reached the *merits* of the district court's certification; it focused only on the mischief of unbridled certifications and the necessity for a statement of reasons by the district court when it grants a 54(b) certification:

Notwithstanding the stridency of the dissent, our holding is not that this was an improper case for Rule 54(b) certification. We have remanded *only* for a *statement of reasons* so that this court may properly determine if this was "the

---

**3.** The district court also noted that "because of the complex nature of the remaining claims in this case, the delay in payment which would occur if certification is denied would span many months, if not years." He concluded that "great injustice would result from further delay."

**4.** Even if *Allis-Chalmers* did not develop the contours of the meaning of "economic considerations," 521 F.2d at 364, that opinion observed that it did not exhaust the catalog of factors. 521 F.2d at 364 n. 6.

infrequent harsh case" warranting final certification . . . .

We express no opinion on the dissent's analysis of the factors to be considered by the district court because, in the view we take, that is a proper function for the district court. Our consideration of such factors is only to determine whether the district court abused its discretion in granting final certification.

*Allis-Chalmers Corp. v. Philadelphia Electric Co., supra* 521 F.2d at 367 n. 16 (original emphasis).

Nothing in *Allis-Chalmers* forecloses the conclusion that it would be unreasonable—even harsh—to prevent Curtiss-Wright's use of the proceeds from a 19 million dollar judgment. The district court properly examined the size and importance of Curtiss-Wright's prospective losses. In this connection, one should not minimize the effect, even upon a large corporation, of a deprivation of the use of almost 19 million dollars in operating capital since September 1976, especially during an inflationary period and in a tight money market.

It is true, as the majority contends, that GE may ultimately prevail on its counterclaims and that, in this event, GE and not Curtiss-Wright would have suffered the deprivation of 19 million dollars during the interim. It is also true, however, that GE may fail in its counterclaims, so that the disadvantage would be placed on Curtiss-Wright. Unlike the majority, I do not read *Allis-Chalmers* to dictate "that the matter remain in status quo when nonfrivolous counterclaims are pending." Rule 54 gives the district court discretion, it seems to me, to consider the size of the loss due to a disparity in interest rates, the indefinite deprivation of substantial working capital

advanced in behalf of GE, and the consequent importance for the litigants.

In the context of Rule 54(b), which contemplates that delay in reviewing partial judgments may be harmful and oppressive, our standard of review is limited to ascertaining whether the district court abused its discretion when it certified "there is no just reason for delay" and directed the entry of final judgment upon three of the claims aggregating approximately 19 million dollars. This court may not and should not substitute its judgment for that of the district court. *Allis-Chalmers* only directs the district court to articulate its reasons when it directs the entry of a final judgment on fewer than all the claims. Our review function on the certification should be merely an inquiry as to whether the justification proffered has a reasonable basis.

In any event, the passage from *Allis-Chalmers* concerning counterclaims does not designate the existence of a counterclaim as absolutely decisive, even in the absence of harsh circumstances. Otherwise, the assertion of any counterclaim, even one contrived, would defeat the possibility of certifying an appeal under Rule 54(b), a situation hardly contemplated by the authors of the Rule.

There is in the present case, however, a second factor that both establishes the harshness of circumstances here and has an independent significance to be balanced against the counterclaims. The district court stated unequivocally that the issues to be reviewed in a certified appeal would not duplicate any of the issues raised by the remaining claims and noted that certification would not entail unnecessary appellate review.[5]

---

5. Judge Coolahan concluded that certification would not in any way result in unnecessary appellate review.

> The claims which have been finally adjudicated are separate, distinct, and independent of any of the other claims or counterclaims involved in this lawsuit. Plaintiff's other claims generally seek recovery for alleged cost overruns and lost profits, and defendant's counterclaims generally seek to recover

> for the costs of alleged technical assistance provided by the defendant to the plaintiff. For this reason, certification should not prevent the rest of this case from being prepared for trial. Also, because of the above, the need for review will not be mooted by any future developments in the District Court. The determinations by the District Court regarding the claims sought to be certified under Rule 54(b) are final and will not be

Being persuaded that the district court did not abuse its discretion, I would reach the merits of the contract issue. For the reasons so well expressed in the district court's opinion, I would sustain the summary judgment in favor of Curtiss-Wright.

changed by later developments in the District Court. Furthermore, because of the nature of the claims which are involved, the appel-

late courts will not need to decide the same issues more than once even if two appeals arise out of this case.