## CURTISS–WRIGHT CORPORATION

v.

## GENERAL ELECTRIC COMPANY, Appellant.

### Nos. 78–2179, 78–2293.

United States Court of Appeals, Third Circuit.

June 4, 1979.

Isaac N. Groner (argued), Walter H. Fleischer, Alfred F. Belcuore, Cole & Gron-

er, P.C., Washington, D.C., Albert G. Besser, Hannoch, Weisman, Stern & Besser, P.A., Newark, N.J., for appellant; Jamie H. Gearon, General Electric Co., Schenectady, N.Y., of counsel.

Ralph N. DelDeo (argued), Richard S. Zackin, Gerard C. Sims, Jr., Crummy, DelDeo, Dolan & Purcell, Newark, N.J., for appellee.

Before SEITZ, Chief Judge, and ALDISERT, ADAMS, GIBBONS, ROSENN, WEIS and HIGGINBOTHAM, Circuit Judges.[*]

## SUR PETITION FOR REHEARING

The petition for rehearing of 597 F.2d 35 filed by Appellee in the above entitled case having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.

For the reasons pointed out by Judges Rosenn and Gibbons, Judges Adams and Higginbotham believe that the issues raised in this appeal are of sufficient importance so as to command the attention of the full Court. Accordingly, they vote for rehearing.

GIBBONS, Circuit Judge, dissenting:

I dissent. In a casual *per curiam* opinion [1] the panel majority, without analysis or explanation, has established a virtual *per se* barrier to Rule 54(b) certification in civil

---

* Judges Hunter and Garth did not participate in the consideration of this matter.

1. Internal Operating Procedure V.B.1. specifies that *per curiam* opinions are to be reserved for "those cases where the law is relatively clear and does not necessitate a signed opinion." With deference, I suggest that Judge Rosenn's opinion persuasively demonstrates that this is not a proper case for a *per curiam* disposition.

damage actions involving counterclaims. With similar unillumination the panel majority also adopts the rule that financial hardship should never be a justification for Rule 54(b) certification unless the claimant is insolvent. These extraordinary holdings find no support in the prior law of this circuit and run directly counter to the spirit and purpose of Rule 54(b). If applied literally and consistently, they will sharply limit the effective use of Rule 54(b) in this circuit, with resulting harm both to litigants and to the ability of district judges to expedite the disposition of cases. This threat to the integrity of the Rule 54(b) certification process is worthy of the court's *en banc* attention.[2]

## I. THE FACTS

This suit is a paradigmatic example of a complex commercial litigation. It grows out of the performance, over a period of nearly a decade, of 21 subcontracts for the production of nuclear propulsion components. These subcontracts had a total value of $215 million. Curtiss-Wright's initial complaint pleaded 16 counts of fraud, misrepresentation, and breach of contract on the part of General Electric in the performance of various subcontracts. Three counts later added by an amended complaint sought $19 million in contract price balances owed under the 21 subcontracts. The latter claims are the subject of this appeal.

General Electric's counterclaim is in two parts. Counts I–IV of the counterclaim constitute a single attempt to recover, on different theories, for $1.9 million in costs incurred as the result of "extraordinary efforts" in the nature of technical assistance provided to Curtiss-Wright during the performance of the 21 contracts in suit. Count V sweeps more broadly. In it, General Electric claims that the same "extraordinary efforts" for which it seeks to recover in Counts I–IV of the counterclaim enabled Curtiss-Wright to avoid a contract default

and a consequent loss of $52 million. General Electric asserts a claim to that $52 million on the theory that Curtiss-Wright has been unjustly enriched by what it never gained, but did not lose.

The facts underlying most of the claims in this extraordinarily large and complex commercial dispute are hotly disputed. Reviewing the case, the district court concluded that full resolution of all of the issues in the case would require "many months, if not years." Certainly this court is in no position to contest that conclusion. Curtiss-Wright's $19 million claim on the subcontracts, however, is not subject to factual dispute. General Electric has accepted the Curtiss-Wright components, has found no fault with them, and has used them in the performance of its prime contract with the Navy. Its sole defense to the claims to payment on the subcontracts is Article 5(c), a provision in each agreement which requires that as a condition to final payment Curtiss-Wright must release all claims arising out of the performance of that agreement. General Electric contends that so long as Curtiss-Wright's 16 claims remain pending Article 5(c) constitutes a bar to recovery of the undisputed contract balances. The application and interpretation of Article 5(c) to the 16 claims presents a pure question of law which the district court decided in Curtiss-Wright's favor. With the exception of that legal issue, there is no dispute that Curtiss-Wright is entitled to final payment upon the subcontracts.

## II. THE DISTRICT JUDGE'S DECISION

With the case in this posture, more than two years after the filing of the original complaint, the district judge granted Curtiss-Wright's motion for summary judgment on the three subcontract claims. The court then made both the "express direction" for entry of judgment and the determination that there was "no just rea-

---

**2.** This dissent necessarily retraces some of the ground covered in Judge Rosenn's thoughtful dissent from the panel opinion, with which I fully agree. I write separately only to stress certain features of this case which make it a particularly worthy subject for *en banc* reconsideration.

son" for delay required by Rule 54(b). In doing so, it complied fully with this court's decision in *Allis-Chalmers Corp. v. Philadelphia Electric Co.*, 521 F.2d 360 (3d Cir. 1975), by providing a carefully considered written statement of reasons supporting the decision to direct entry of a final judgment. In that statement the court noted that the certification remedy was to be reserved for "the infrequent harsh case." Moreover, he found that the presence of General Electric's counterclaim, and the consequent possibility of a setoff, militated against certification. But on balance, he concluded that sound judicial administration and fairness to litigants would ultimately be advanced by certification. With regard to judicial administration, the court found that the certification of the order as a final judgment could not result in unnecessary or duplicative appellate review: the contract claim was "separate, distinct, and independent of any other claims in this lawsuit," and would not be mooted by further proceedings in the case. The district court also concluded that certification would cause no delay or inefficiency at the trial court level, since the other claims in the case could be prepared for trial during the pendency of the appeal.

On the issue of fairness to the litigants, the district court noted that until judgment was entered on the contract counts Curtiss-Wright would be entitled only to 6% prejudgment interest on its $19 million claim, and would be required to absorb the difference between that rate and the much higher market rate of interest, thereby suffering "daily financial losses from nonpayment of these liquidated debts." This injustice, the court concluded, could prove exceptionally severe since "because of the complex nature of the remaining claims in this case, the delay in payment which would occur if certification were denied would span many months, if not years."

## III. THE PANEL MAJORITY OPINION

The panel majority opinion rejects the district court's carefully considered decision on two grounds. First, it postulates that *Allis-Chalmers Corp. v. Philadelphia Electric Co., supra,* establishes a blanket presumption against the certification of separate claims where a counterclaim is pending. Second, it holds that as a matter of law the district court could not have viewed the loss of over one million dollars in annual interest, even for a period of "many months or years," as a "harsh circumstance" sufficient to overcome that presumption and permit an immediate appeal. It therefore concludes that, despite the district judge's unchallenged finding that this appeal poses no risk of delay or wasted effort at either the trial court or appellate level, the decision to enter final judgment on the $19 million claim must be reversed.

## IV. THE PANEL MAJORITY'S USE OF PRECEDENT

The panel majority opinion effectively holds that the district court may not enter a Rule 54(b) money judgment in an action in which a non-frivolous counterclaim has been filed unless the party seeking to recover on the judgment is insolvent. The opinion makes no serious effort to justify this result. Rather, it asserts that its decision is compelled by this court's decision in *Allis-Chalmers.* In support of this conclusion, however, it cites not to the *Allis-Chalmers* majority opinion, but to my *dissent* in that case.

I am underwhelmed. First, as Judge Rosenn points out,[3] Judge Garth's majority opinion in *Allis-Chalmers* stresses that the reversal and remand of the Rule 54(b) certification in that case did *not* rest on a determination "that this was an improper case for Rule 54(b) certification." 521 F.2d at 367 n. 16. According to the *Allis-Chalmers* court the remand was "*only* for a *statement of reasons*," and "express[ed] no opinion on" the merits. *Id.* (emphasis in original). Second, contrary to the panel majority's assertion, my dissent in *Allis-Chalmers* was not directed to the majority's improper evaluation of the merits of the certification,

---

**3.** Dissenting Opinion, 597 F.2d at 38.

but rather to its unprecedented and unwarranted imposition of a "statement of reasons" requirement in a case where the justification for certification was glaringly apparent on the face of the record. This is evident from even a cursory reading of the passage cited by the panel majority. *See* 521 F.2d at 367. Finally, although *dicta* in *Allis-Chalmers* might be read to cut against certification here, there is, as Judge Rosenn demonstrates,[4] other language in the opinion which would permit and indeed encourage the result reached by the district court.[5] The majority's unsupported conclusion that *Allis-Chalmers* controls here simply cannot be credited.

## V.  ANALYSIS

The fact that the panel majority opinion is neither controlled nor supported by prior precedent does not of course demonstrate that its holding is erroneous, or that it warrants the court's *en banc* consideration. Thus I turn to the substance of the panel majority's argument.

### A.  *The Creation of a Presumption against Certification in Suits involving Counterclaims*

The first holding is that the presence of a counterclaim is an action for money damages creates a presumption against a Rule 54(b) certification. This is a gross oversimplification of the Rule 54(b) inquiry, and conflicts with prior decisions of the Supreme Court and of this court sitting *en banc*. True, "[t]he district court's discretion in entering a Rule 54(b) certificate where a counterclaim is involved should be exercised with special care." 6 *Moore's Federal Practice* ¶ 54.35 at 585 (2d ed. 1976). The reason is straightforward: experience shows that in cases where a counterclaim (particularly a compulsory counterclaim) has been filed,

there is an increased possibility that there will be some "just reason" to delay the entry of judgment. For example, the presence of a compulsory counterclaim may indicate that there is a risk that in a second appeal from judgment on the counterclaim the court of appeals will be required to consider virtually the same factual and legal questions presented in the Rule 54(b) appeal. *Panichella v. Pennsylvania R.R. Co.*, 252 F.2d 452, 455 (3d Cir. 1958). In other counterclaim cases, there may be a risk that a Rule 54(b) appeal will simply "delay the trial of the [counterclaim] without in any way simplifying or facilitating its future litigation." *Id.* at 455; *Campbell v. Westmoreland Farm, Inc.*, 403 F.2d 939, 942 (2d Cir. 1968).

The mere fact that a non-frivolous counterclaim has been filed, however, does not demonstrate that either of these risks is present. There will frequently be cases, like this one, where there is no risk of duplicative appellate review or unwarranted delay of the proceedings in the trial court. In such cases, the fact that a counterclaim has been filed is an essentially neutral factor in the Rule 54(b) analysis. The presence of that claim of course creates a risk that the plaintiff will ultimately be required to pay back a portion of the Rule 54(b) judgment. But there is an equal risk that the counterclaimant will fail to prove his case at trial and will have to pay out. Common sense suggests that where both parties are solvent the party whose claim is liquidated in amount and reduced to judgment generally has the stronger claim to possession of the disputed fund during the litigation of the remaining claims. *See,* Comment, 56 B.U.L.Rev. 579, 592–93 (1976).[6]

---

4. Dissenting Opinion, 597 F.2d at 39.

5. It is worth noting that the district judge in *Allis-Chalmers* clearly did not regard that decision as barring Rule 54 certification of a money judgment when a counterclaim was pending. On remand, after preparing the "statement of reasons" demanded by the *Allis-Chalmers* majority, he immediately reentered judgment

upon the claim. *See* Note, 54 N.C.L.Rev. 1265, 1274 n. 58 (1976).

6. The *dictum* in *Allis-Chalmers* that the presence of a counterclaim in a case "weighs heavily against the grant of a 54(b) certification," 521 F.2d at 366, thus sweeps too broadly and ought not to be followed.

It is here that the central role of the district judge in the operation of Rule 54(b) emerges. If he determines that the counterclaim is substantial and likely to succeed if pressed to judgment, he may well conclude that certification is unwarranted. On the other hand, the judge may also decide that the counterclaim asserted is so much smaller than the liquidated judgment, or so speculative and difficult of proof, that it would be unfair to delay the entry of judgment while the counterclaimant attempts to prove his case. The judge may even conclude that all or part of the counterclaim is being pressed principally to delay payment on the principal obligation, and enter judgment under Rule 54(b) in order to encourage a prompt settlement of the remaining claims in controversy.

The relationship between Rule 54(b) certifications and settlements is, from the viewpoint of the district courts, particularly significant. In commercial litigation it requires little imagination for lawyers to conjure up facially plausible though factually weak counterclaims. Experienced lawyers and judges are all too familiar with the possibilities for delay inherent in liberal federal discovery rules. District judges on the scene are particularly well situated to exercise informed judgment as to when the entry of a final judgment on a complaint will remove the incentive for time consuming and costly litigation over "imaginative" counterclaims. They are, moreover, conscious of the fact that resolution, favorably or unfavorably, of a legal issue dispositive of the plaintiff's claim will frequently produce a climate in which serious settlement negotiations will commence and often succeed. The concern of appellate judges for their own caseloads should not blind them to the reality that by limiting the use of Rule 54(b) they are depriving their brothers in the district court of a significant tool in the management of trial court caseloads.

This case is illustrative. The district judge, on the basis of his personal knowledge of the case, concluded that the presence of General Electric's counterclaim was not a just reason for delay. Curtiss-Wright's liquidated, undisputed claim for nearly $19 million is opposed by an unliquidated, unproven counterclaim for $60 million. But only $1.9 million of that counterclaim is alleged to represent money actually spent by General Electric. The remaining $52-odd million is claimed on the theory that because General Electric spent $1.9 million and thereby helped Curtiss-Wright to avoid a costly default on the subcontracts, it is therefore entitled to recover from Curtiss the $52 million that Curtiss-Wright would have lost in that default on a theory of unjust enrichment. Without expressing definitive views on the merits of the counterclaim, I think it obvious that the district judge concluded, as I do, that it would be unfair to require the plaintiff to finance the prosecution of this claim with its admitted, liquidated judgment. Nor do I regard it as fatal to the certification that the district judge did not list his skepticism about the merits of the counterclaim as a factor in his *Allis-Chalmers* statement. While a judge may not want to appear to prejudge a highly speculative counterclaim, when exercising a judgment as to Rule 54(b) certification he can hardly be blind to its likely worth or to the probability of its settlement when it ceases to serve as an instrument of delay. The district judge may—and often must—rely in his discretionary decisions upon considerations which propriety dictates cannot and should not be placed on the public record. Where, as here, the trial court's *Allis-Chalmers* statement correctly concludes that immediate appeal would not result in any duplicative review or delay of the trial court proceedings, deference to the district court's appraisal of the justice and practicality of entering an immediate judgment is surely appropriate.

The majority opinion strips the district courts in this circuit of the power to make this sort of discretionary Rule 54(b) determination in all cases involving counterclaims. That result, I submit, is squarely contrary to the well-settled principle that the timing of a Rule 54(b) certificate "is, with good reason, vested by the rule primarily in the discretion of the District

Court as the one most likely to be familiar with the case and with any justifiable reasons for delay." *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 437, 76 S.Ct. 895, 900–1, 100 L.Ed. 1297 (1956). *Accord, Bendix Aviation Corp. v. Glass,* 195 F.2d 267, 272 (3d Cir. 1952) (*en banc*) (Maris, J.); 10 C. Wright & A. Miller, *Federal Practice & Procedure* § 2659 at 75 (1973); 6 *Moore's Federal Practice* ¶ 54.28[1] at 364; ¶ 54.41[3] at 741 (2d ed. 1976).

The holding is also inconsistent with this court's decisions in *Cold Metal Process Co. v. United Engineering & Foundry Co.,* 221 F.2d 115 (3d Cir. 1955), *aff'd,* 351 U.S. 445, 76 S.Ct. 904, 100 L.Ed. 1311 (1956), and *Bendix Aviation Corp. v. Glass,* 195 F.2d 267 (3d Cir. 1952) (*en banc*). Both cases upheld the jurisdiction of the court of appeals over claims certified under Rule 54(b) despite the pendency in each case of a compulsory counterclaim, and in the absence of any harsh or unusual circumstances beyond those present in this case. In *Cold Metal Process,* the appeal was from a money judgment entered in a complex commercial case. Despite the presence of a compulsory counterclaim, this court concluded that the appeal was "the very kind of thing Rule 54(b) was written to provide for" and held that the district court had not abused its discretion in authorizing it. 221 F.2d 115, 115. The Supreme Court agreed. 351 U.S. at 450–51, 76 S.Ct. 904. *Bendix Aviation Corp. v. Glass, supra,* an *en banc* decision, reviewed a dismissal of plaintiff's claim for specific performance, certified under Rule 54(b), despite the presence of an unadjudicated counterclaim. These cases directly controvert the majority's holding that the pendency of a counterclaim is, without more, a "just reason" for delay under Rule 54(b). That holding is both inconsistent with precedent and unsound on policy grounds.

### B. *The "Financial Hardship" Holding*

Because of the panel majority's erroneous view of the effect of the counterclaim upon the Rule 54(b) determination, it skews the Rule 54(b) determination by requiring a showing of "harsh circumstances" in order to justify appeal. Even if I agreed with its position on the effect of the counterclaim, however, I could not accept the panel majority's assertion that for a solvent plaintiff the deprivation for several years of a mere $19 million to which it is concededly entitled can never amount to "harsh circumstances." As Judge Rosenn persuasively demonstrates,[7] this unprecedented result defies common sense, economic reality, and a square holding to the contrary by the Tenth Circuit in *United Bank of Pueblo v. Hartford Accident & Indemnity Co.,* 529 F.2d 490 (10th Cir. 1976). At the very least, Judge Rosenn's carefully limited position— that financial hardship to a solvent debtor should be cognizable in a Rule 54(b) determination under the circumstances of this case—is surely correct.

I would go further. Rule 54(b) allows the entry of judgment on a proven or admitted claim when there is "no just reason" for delaying that judgment. By entering that judgment, the district court puts a litigant who would not otherwise be entitled to immediate possession of the disputed fund in a position to execute on the judgment and obtain that fund immediately. In a civil damage action between two solvent parties, it would therefore seem that a needless delay in obtaining possession of a substantial sum of money to which one is entitled under a valid judgment is the *precise* "harsh circumstance" that Rule 54(b) is intended to prevent. The proper rule is that when the district court has determined, as it did here, that "no just reason" exists to delay the entry of judgment, the continued loss of the right to execute on that judgment or obtain a supersedeas bond is *prima facie* an injustice sufficient to support the certification of finality.

Whether one accepts Judge Rosenn's position or mine, however, it is clear that the panel majority's holding is inconsistent with the policy and purposes of Rule 54(b).

7. Dissenting Opinion, 597 F.2d at 37–39.

## VI. CONCLUSION

Judge Rosenn's dissent demonstrates as well as any opinion can that the panel majority holdings in this case are unsupported by precedent. From what has been said in this opinion, it should also be apparent that these holdings directly undermine the policies which Rule 54(b) seeks to advance. If followed, their effect, I submit, will be to bar the use of Rule 54(b) in "the very kind of case for which Rule 54(b) [was] designed," *Cold Metal Process Co. v. United Engineering & Foundry Co.,* 351 U.S. 445, 451, 76 S.Ct. 904, 908, 100 L.Ed. 1311 (1951), and to eliminate a significant tool for district court management of the disposition of litigation. Rehearing *en banc* is far more warranted in this case than in many for which we have convened the full court in recent years. Moreover, given the conflict between this case and the holding of the Tenth Circuit in *United Bank of Pueblo v. Hartford Accident & Indemnity Co., supra,* and the recognized lack of coherent standards for the review of Rule 54 certifications, *see* 10 C. Wright & A. Miller, *Federal Practice & Procedure* § 2655 at 39 (1973), this case seems a proper occasion [8] for the Supreme Court to break its 23 year silence regarding the proper administration of Rule 54(b) and to provide some much needed guidance to the courts of appeals and to this court especially.

Judge Rosenn joins in this dissent and votes for rehearing *en banc.*

For the reasons pointed out by Judge Rosenn and Judge Gibbons, Judges Adams and Higginbotham believe that the issues raised in this appeal are of sufficient importance so as to command the attention of the full court. Accordingly, they vote for rehearing.

---

8. This is particularly the case where, as here, because of recusals only three of seven eligible judges have voted against rehearing *en banc.*