**ZENITH RADIO CORPORATION,**
**Plaintiff,**

v.

**MATSUSHITA ELECTRIC INDUSTRI-**
**AL CO., LTD., et al., Defendants.**

**NATIONAL UNION ELECTRIC**
**CORPORATION, Plaintiff,**

v.

**MATSUSHITA ELECTRIC INDUSTRI-**
**AL CO., LTD., et al., Defendants.**

**In re JAPANESE ELECTRONIC PROD-**
**UCTS ANTITRUST LITIGATION.**

**Civ. A. Nos. 74–2451, 74–3247.**
**MDL 189.**

**United States District Court,**
**E. D. Pennsylvania.**

**March 27, 1981.**

---

411. The antidumping opinion dismissed all but a few minor aspects of plaintiffs' 1916 Anti- dumping Act claims. The remainder of these claims are dismissed herein. See n. 372, *supra*.

Blank, Rome, Comisky & McCauley by Edwin P. Rome, William H. Roberts, John Hardin Young, Arnold I. Kalman, Kathleen H. Larkin, Norman E. Greenspan, Lawrence S. Bauman, Philadelphia, Pa., for Zenith Radio Corp. and National Union Elec. Corp., plaintiffs.

Philip J. Curtis, John Borst, Jr., Glenview, Ill., for Zenith Radio Corp., plaintiff.

Mudge Rose Guthrie & Alexander by Donald J. Zoeller, John P. Hederman, Thomas P. Lynch, Howard C. Crystal, Robert A. Jaffe, Shelly B. O'Neill, Mark K. Neville, Jr., New York City, Drinker, Biddle & Reath by Patrick T. Ryan, Philadelphia, Pa., for Tokyo Shibaura Elec. Co., Ltd. and Toshiba America, Inc., defendants; defense coordinating counsel.

Duane, Morris & Heckscher by Henry T. Reath, Terry R. Broderick, Philadelphia, Pa., Crummy, Del Deo, Dolan & Purcell by John T. Dolan, Arnold B. Calmann, Newark, N. J., Seki, Jarvis & Lynch by Hoken S. Seki, Richard O. Briggs, Chicago, Ill., for Mitsubishi Elec. Corp. and Mitsubishi Elec. Sales America, Inc.

Reid & Priest by Charles F. Schirmeister, Robert J. Lynch, New York City, L. Peter Farkas, Washington, D. C., for Mitsubishi Corp. and Mitsubishi Intern. Corp., defendants.

Weil, Gotshal & Manges by Ira M. Millstein, A. Paul Victor, Joel B. Harris, Kevin P. Hughes, Robert K. Hood, H. Adam Prussin, Harry M. Davidow, Jeffrey L. Kessler, Stuart Peim, Lenore Liberman, Gayle E. Hanlon, Makoto Matsuo, New York City, Morgan, Lewis & Bockius by Raymond T. Cullen, Philadelphia, Pa., for Matsushita Elec. Indus. Co., Ltd., Matsushita Elec. Corp. of America, Matsushita Electronics Corp., Matsushita Elec. Trading Co., and Quasar Electronics Corp., defendants.

Metzger, Shadyac & Schwarz by Carl W. Schwarz, Michael E. Friedlander, William H. Barrett, Stephen P. Murphy, William B. T. Mock, Jr.; Tanaka, Walders & Ritger by H. William Tanaka, Lawrence R. Walders, B. Jenkins Middleton, Washington, D. C., Hunt Kerr Bloom & Hitchner, by Charles J. Bloom, Philadelphia, Pa., for Hitachi, Ltd., Hitachi Sales Corp. of America, and Hitachi Kaden Hanbai Kabushiki, Kaisha, defendants.

Wender, Murase & White by Peter J. Gartland, Gene Yukio Matsuo, Peter A. Dankin, Lance Gotthoffer, New York City, for Sharp Corp. and Sharp Electronics Corp., defendants.

Whitman & Ransom by Patrick H. Sullivan, Dugald C. Brown, James S. Morris, Kevin R. Keating, Michael S. Press, New York City, Hunt Kerr Bloom & Hitchner, by Charles J. Bloom, Philadelphia, Pa., for Sanyo Elec., Inc., Sanyo Elec. Co., Ltd., Sanyo Mfg. Co., and Sanyo Elec. Trading Co., Ltd., defendants.

Arnstein, Gluck, Weitzenfeld & Minow by Louis A. Lehr, Jr., Stanley M. Lipnick, John L. Ropiequet, Chicago, Ill., for Sears, Roebuck & Co., defendant.

Rosenman, Colin, Freund, Lewis & Cohen by Asa D. Sokolow, Renee J. Roberts, Marc Rowin, Kaye, Scholer, Fierman, Hays & Handler by Joshua F. Greenberg, Randolph S. Sherman, David D. Chazin, New York City, Wolf, Block, Schorr & Solis-Cohen by Franklin Poul, Philadelphia, Pa., for Sony Corp. and Sony Corp. of America, defendants.

Kirkland & Ellis by Thomas P. Coffey, E. Houston Harsha, Karl F. Nygren, Chicago, Ill., for Motorola, Inc., defendant.

## MEMORANDUM AND ORDER

### (Pretrial Order No. 308)

### (Rule 54(b) Certification)

EDWARD R. BECKER, District Judge.

In the accompanying opinion and order, 513 F.Supp. 1100, we have granted summary judgment in favor of the defendants on all of plaintiffs' remaining claims. Still outstanding in the case, however, are defendants' counterclaims alleging: (1) that Zenith violated the Robinson-Patman Act and Sections 1 and 2 of the Sherman Act by horizontal and vertical price-fixing arrange-

ments, market allocations, and "key dealer preferences"; and (2) that Zenith sought to interfere with its competitors, including the counterclaimants, "by every means available, including the submission of complaints, petitions, testimony and other information to various federal governmental agencies and officials, federal courts, and the United States Congress which were based upon sham, false and misleading allegations and information, without regard to the truth or merits of the claims made."[1] Given the existence of defendants' counterclaims, we must now decide whether to certify the summary judgment as final under Federal Rule of Civil Procedure 54(b), thereby making it immediately available for appellate review.[2]

■ Rule 54(b) provides in pertinent part:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, crossclaim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

The purpose of Rule 54(b) is to reduce the probability that delay will result in substantial hardship and unfairness to the parties in complex multiple-claim actions arising from the liberal federal joinder provisions. The trial court is given the discretion to certify certain claims as final before the ultimate adjudication of all issues, after weighing the dangers of piecemeal review against the necessity of assuring that the interests of judicial administration and eq-

uity are served. *See* 6 *Moore's Federal Practice* ¶ 54.27, at 325 (2d ed. 1976).

■ Before Rule 54(b) certification may be granted, several requirements must be satisfied. First, the action must involve multiple claims for relief or multiple parties. Second, the decision involving one or more of the claims and affecting one or more of the parties must be a final judgment. Third, there must be no just reason for delay in appealing the case until all issues are adjudicated. *See generally* 10 C. Wright & A. Miller, *Federal Practice and Procedure.*

The first requirement is obviously met here, as this case involves both multiple parties and multiple claims. The second requirement is just as easily fulfilled. The Supreme Court in its recent decision, *Curtiss-Wright Corp. v. General Electric Co.,* 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980), explained the requirement as meaning that

> It must be a "judgment" in the sense that it is a decision upon a cognizable claim for relief, and it must be "final" in the sense that it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action."

446 U.S. at 7, 100 S.Ct. at 1465, *quoting Sears Roebuck & Co. v. Mackey,* 351 U.S. 427, 436, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956). The summary judgment here meets this definition by reaching an ultimate disposition of plaintiffs' claims for relief.

■ The last requirement—that there be no just reason for delay—is the one about which there is the most controversy (and litigation), and was the requirement primarily under consideration in *Curtiss-*

---

1. The counterclaiming defendants thus invoke the "sham litigation" theory of antitrust liability recognized in *Otter Tail Power Co. v. United States,* 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973). The counterclaims described in the text are asserted by certain of the Matsushita, Mitsubishi, Hitachi, Sharp, Sanyo, and Toshiba defendants. In addition, Sears asserts a counterclaim against Zenith based on the Lanham Act, 15 U.S.C. §§ 1051–1127.

2. In the absence of such certification, appellate review will in effect be stayed until the counterclaims are finally prepared for trial according to the procedures established in PTO 154 (summary judgment motions may well be interposed in the interim), tried (if summary judgment is not granted), and adjudicated. In this case, given the magnitude of the counterclaims and the enormity of the record developed with respect thereto, such a process would take a considerable period of time.

*Wright.* The district court in that case had granted summary judgment for the plaintiff on a $19 million claim for the balance due on contracts already performed. Despite the existence of the defendants' counterclaims under a release clause in the contracts that could have resulted in a setoff against the plaintiffs' claim, the district court certified the judgment as final under Rule 54(b). On defendants' appeal, the Third Circuit directed the district court to vacate its certification of finality under Rule 54(b) and dismissed the appeal. 597 F.2d 35 (3d Cir. 1979) (per curiam). The court held that its earlier decision in *Allis-Chalmers Corp. v. Philadelphia Electric Co.,* 521 F.2d 360 (3d Cir. 1975), "dictates that the matter remains in status quo when non-frivolous counterclaims are pending, and in the absence of unusual or harsh circumstances," 597 F.2d at 36, and concluded that plaintiffs' inability to use the money from the judgment while counterclaims were litigated was not a sufficiently harsh circumstance to warrant upsetting the status quo.

The Supreme Court, however, vacated the Third Circuit's decision and upheld the district court's Rule 54(b) certification of finality of the summary judgment. The Supreme Court disagreed with the Third Circuit's conclusion that the possibility of a setoff and the presence of non-frivolous counterclaims prevented Rule 54(b) certification, declaring that

> The mere presence of such [non-frivolous counter-] claims, however, does not render a Rule 54(b) certification inappropriate. If it did, Rule 54(b) would lose much

of its utility.... Like other claims, their significance for Rule 54(b) purposes turns on their interrelationship with the claims on which certification is sought.

446 U.S. at 9, 100 S.Ct. at 1465. The Court interpreted Rule 54(b)'s requirement that there be no just reason for delay as involving the consideration of two essential interests: judicial administration and equity. Noting that the district court had taken into account interests of judicial administration by determining the absence of such factors as the nonseverability of the claims and the possibility of repeated appeals on individual claims, the Court pointed out that Rule 54(b) certification could still be granted despite the presence of one of the above factors mitigating against certification as long as the district court found a sufficiently important reason for entering a judgment as final. Once the interests of judicial administration have been considered substantial deference must be given to the district court's reasonable determination of the equities in the case, since the district court is "the one most likely to be familiar with the case and with any justifiable reasons for delay." 446 U.S. at 10, 100 S.Ct. at 1466, *quoting Sears Roebuck & Co., supra,* 351 U.S. at 437, 76 S.Ct. at 901.[3]

The same interests of judicial administration and equity that the Supreme Court considered essential in determining whether there is any just reason for delay apply with even greater force in this case. *Curtiss-Wright* permitted the Rule 54(b) certification of a summary judgment that gave the plaintiff the benefit of the difference

---

**3.** In the wake of *Curtiss-Wright,* it is uncertain to what extent *Allis-Chalmers* has continuing vitality. The Supreme Court did not expressly overrule *Allis-Chalmers* in its entirety, but merely disagreed with the Third Circuit's conclusion that Rule 54(b) certification should normally be unavailable when non-frivolous counterclaims for a monetary setoff exist. A subsequent Seventh Circuit case, *Bank of Lincolnwood v. Federal Leasing, Inc.,* 622 F.2d 944 (1980), assumed the vitality of *Allis-Chalmers* and used the following factors listed in that decision as relevant in determining whether Rule 54(b) certification was proper:

(1) the relationship between the adjudicated and unadjudicated claims;

(2) the possibility that the need for review might or might not be mooted by future developments in the district court;

(3) the possibility that the reviewing court might be obliged to consider the same issue a second time;

(4) the presence or absence of a claim or counterclaim which could result in a setoff against the judgment sought to be made final;

(5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

622 F.2d at 954, *quoting Allis-Chalmers, supra,* 521 F.2d at 364.

between the prejudgment and current interest rates even though it admittedly created a hardship for the defendant which might eventually have been granted a set-off on the contract claims. The Third Circuit in *Allis-Chalmers* and *Curtiss-Wright* had been worried about the possibility that the initial determination awarding a monetary claim to the plaintiff would, in practical terms, be eradicated by the district court when it considered the defendants' counterclaims. Since the defendants here have prevailed on the claims already adjudicated (and no money damages have been awarded), that cannot happen in this litigation. The status quo has been preserved without hardship to any party.

Sound judicial administration of this case cries out for resolution of the numerous issues subsumed in our grant of summary judgment before the parties turn their attention to the counterclaims. For the most part the counterclaims are factually and legally distinct from plaintiffs' claims, though there are a number of factually overlapping issues between the claims dismissed this day and the counterclaims.[4] However, the treatises and the case law have recognized that individual claims need not be legally and factually distinct in order for entry of Rule 54(b) certification on some, but not all of the claims. *See* 10 Wright and Miller, *supra* § 2657 at 50–54. It is our clear perception that final determination through appeal of the plaintiffs' claims which, if there were any basis for them, would be of enormous scope and importance, in advance of the trial of defendants' counterclaims, which are not of such scope or importance, would save considerable expenditures of court and counsel time and client monies.

Moreover, this is precisely the type of case in which Rule 54(b) was meant to apply. It is already ten years old. Its magnitude is demonstrated by the accompanying opinion. The Court of Appeals has been hospitable to our advocacy of the importance interlocutory appeal is a management tool in this case[5] by accepting two certifications under 28 U.S.C. § 1292(b),[6] although that statute provides a stricter test for appellate review than does Rule 54(b). It is our strong view that the interests of judicial administration make Rule 54(b) certification imperative and that equity requires no less. We conclude that there is no just reason for delay. In the accompanying order we therefore direct the entry of final judgment on plaintiffs' claims and certify that judgment for immediate appellate review under Federal Rule of Civil Procedure 54(b).

### PRETRIAL ORDER NO. 308

AND NOW, this 27th day of March, 1981, for the reasons set forth in the foregoing Memorandum, it is ORDERED that the accompanying order of summary judgment be entered as a final judgment and it is hereby certified to the Court of Appeals for review pursuant to Federal Rule of Civil Procedure 54(b).

---

4. The plaintiffs will doubtless attempt to offer much of the evidence that they have advanced in support of their principal claims in response to defendants' "sham litigation" counterclaims, should those counterclaims survive the summary judgment motion which plaintiffs have represented they will interpose. Moreover, some of the evidence involved in plaintiffs' principal claims, i. e., that evidence related to the market, pricing structure, and impact issues, may well be involved in defendants' price fixing, market allocation, and key dealer preference counterclaims.

5. In our memorandum certifying the jury trial question for 28 U.S.C. § 1292(b) interlocutory appeal, 478 F.Supp. 942, 945 (E.D.Pa.1979), we had occasion to comment upon the importance of the availability of interlocutory appeal to the management of the "monster" case, and we incorporate those observations by reference here.

6. 1292(b) certification was accepted on the question whether the plaintiffs have a right to trial by jury regardless of the complexity of the case, *see* 478 F.Supp. 889, 942 (E.D.Pa.1979), *vacated and remanded*, 631 F.2d 1069 (3rd Cir. 1980) and on the 1916 Antidumping Act issue, 494 F.Supp. 1190, 1243 (E.D.Pa.1980), *appeal pending*, No. 80–2080 (3rd Cir.).